## BENDER v. REYNOLDS.

1. A deed made previous to marriage, by which the property of the wife, is conveyed to a trustee, in trust, that immediately after the solemnization of the marriage, the right to the slaves conveyed, and their issues, profits and labor, shall be held by the trustee, for the joint use of husband and wife, during their joint lives, and after the death of one of them, to the survivor, without being in any manner, subject to the debts of the husband, does not create a separate estate in the wife, but after reduction into possession by the husband, may be sold under execution against him at law.

2. Whether, if it was shown, that either the statute, or common law of South Carolina, where the deed was made, recognized the settlement, as vesting the wife with an estate, not subject to the husband's debts, it would not be the law of the contract in this State, quere.

Writ of Error to the Circuit Court of Lowndes.

A *fieri facias* having issued from the circuit court of Lowndes, against the goods and chattels of Wm. B. Townsend, at the suit of the plaintiff in error, was levied by the sheriff of that county on a male slave named Bill. Thereupon, the defendant in error interposed a claim to the slave pursuant to the statute—an issue was made up to try the right of property and submitted to a jury, who returned a verdict for the claimant, and judgment was rendered accordingly.

On the trial, the plaintiff excepted to the ruling of the court, and from the bill of exceptions, we gather the following facts: The slave was levied on at the plantation of the defendant in execution, and at the time of the levy, and for several years previously, had been in his exclusive possession, and under

his control. This slave, with many others, had been em-
ployed by the defendant on the plantation referred to, and
the profits derived from such employment were enjoyed by
him. There was no evidence that the claimant ever derived
any profit from the labor of the slave, or had ever attempted
to exercise any control over him or the plantation.

A bill of sale was offered in evidence, executed in South
Carolina, on the 5th day of November, 1835, by which the
defendant in execution, in consideration of $1,500 paid him
by the claimant, as trustee for the claimant and his wife Mar-
tha S., bargained and sold to the claimant as such trustee,
the slave in question with two others, to have and to hold
the same in trust as aforesaid, according to the purposes of
the marriage settlement, &c.

The marriage settlement referred to was executed in
South Carolina, on the 26th of March, 1835, by the claimant
as a trustee, and the defendant in execution, and Martha S.
Jenkins, who afterwards became his wife. These articles
recite that a marriage was shortly to be solemnized between
the two latter, and that Martha S. was entitled to and pos-
sessed in her own right of certain slaves, and bonds and obli-
gations described in an annexed schedule; that it was agreed
between them that this property should be granted, bar-
gained, sold, released and conveyed unto the claimant, his
executors, administrators and assigns, upon certain uses and
trusts, &c. thereinafter limited, expressed and declared. The
deed then proceeds to make Martha S. grant, bargain, sell,
&c. unto the claimant certain slaves, and bonds, all of which
are designated and described either in the body thereof, or in
a schedule, " in trust to, and for the sole and exclusive use,
benefit and behoof of the said Martha S. Jenkins, her execu-
tors, administrators and assigns, until the solemnization of
the said marriage; and from and immediately after the so-
lemnization thereof, in trust to, and for the joint and equal use,
benefit and behoof of the said Martha S. Jenkins and Wm.
B. Townsend, for and during the term of their natural lives,
without being subject in any manner whatsoever to the debts,
contracts or engagements of the said William B. Townsend;
and in trust to permit and suffer them, the said Martha S.
Jenkins and William B. Townsend, and their assigns during

their joint lives, to receive and take the issues, profits and labor of the said slaves, and the interest of the said bonds or obligations, to, and for their joint and equal use, benefit and behoof: and from and immediately after the death of either of them, the said Martha S. Jenkins and William B. Townsend, in trust to, and for the sale and exclusive use, benefit and behoof of the survivor of them, &c. for and during the term of his or her natural life, without being subject in any manner whatsoever to his or her debts or contracts, and in trust to permit and suffer such survivor, during his or her natural life, to receive and take the rents, issues and labor of said slaves, and the interest of the said bonds or obligations: and from and immediately after the death of the survivor of them, &c., in case there should be issue, children or grandchildren of the said marriage, being at the time of the death of such survivor, then in trust, that the aforesaid negro slaves, with their issue and increase, and the aforesaid bonds or obligations should be equally and absolutely divided between the issue of the said Martha S. Jenkins and William B. Townsend, their executors, administrators or assigns, freed and discharged of and from all further or other uses, trusts and limitations whatsoever. And in case the said Martha S. Jenkins should survive the said William B. Townsend, and there should be no issue of the said marriage living at the time of his death, then in trust that the aforesaid negro slaves, with their increase, and the aforesaid bonds or obligations, should be re-conveyed, released and re-assigned and delivered up to the said Martha S. Jenkins, her executors, administrators or assigns, freed and discharged of and from all further or other uses and trusts, limitations or conditions whatsoever. But in case the said William B. Townsend should survive the said Martha S. Jenkins, and there should be no issue of the said marriage living at the time of her death, then in trust that the aforesaid negro slaves, with their increase, and the aforesaid bonds or obligations, should be re-conveyed, released, re-assigned and delivered up to the said William B. Townsend, his executors, administrators and assigns, freed and discharged of and from all further or other uses, trusts, limitations and conditions whatsoever. And it is further mutually covenanted and agreed upon, by and between the

parties to these presents, that in case the said Martha S. Jenkins and William B. Townsend, or the survivor of them, shall at any time hereafter during the coverture, or during the life-time of the survivor of them, think it beneficial to their interest, or to the interest of the survivor of them, to have the aforesaid negro slaves sold, disposed of, or exchanged for other property, real or personal, or in case the said bonds or obligations are paid, that then the said Benjamin Reynolds, on being hereunto requested in writing by the said Martha S. Jenkins and William B. Townsend jointly, or the survivor of them, shall absolutely sell and dispose of the aforesaid negro slaves, with their increase, and invest the purchase money, and also the principal of the aforesaid bonds or obligations, in case the same be paid, in such other property, real or personal, as they, the said Martha S. Jenkins and William B. Townsend, or the survivor of them may require, and such purchased, substituted or invested property, real or personal, shall be held by the said Benjamin Reynolds, his executors or administrators, subjected to the same uses, trusts, limitations and conditions, as are hereinbefore expressed, limited and declared of and concerning the hereinbefore granted and assigned premises, and to, and for no other use, trust, intent or purpose whatsoever, &c., &c."

Evidence was adduced on the part of the claimant, tending to prove that the slave in question had previous to the execution of the bill of sale, been the property of the defendant in execution, and that he executed the bill of sale in consideration of part of the money and interest, which had been the property of his wife, and which was conveyed by the marriage settlement: that the sale and conveyance of the slave was agreed upon and arranged between the defendant in execution, and the claimant as trustee. The execution of the bill of sale and marriage settlement were duly proved; the latter was recorded in the proper office in South Carolina, and also in this State, and the former in this State, so that no objection was made to the execution or registration of either of them.

It was proved that the marriage between Martha S. Jenkins and the defendant took place, and that they lived to-

57

gether ever since in the enjoyment of the property settled by the deed—the latter having practised medicine and made money thereby. There was no evidence that the plantation referred to, or the slaves thereon, except the one levied on, constituted any part of the property conveyed by the deeds above recited. The consideration of the bill of sale was shown to be such as is recited therein.

The court charged the jury, that the marriage settlement and bill of sale effectually secured the property and interest in the slave in question to the claimant, as trustee against the claims of the creditors of the defendant in execution. That inasmuch as the marriage settlement embraced the property and interests which belonged to the wife of W. B. Townsend, and the same was executed previous to their marriage; and as the interests conveyed thereby furnished the consideration for the bill of sale, if the jury believed such to have been the fact, the property conveyed by the marriage settlement was not subject to the debts or contracts of the defendant in execution, but was exempt from an execution against his estate. Under the legal construction and effect of the writings referred to, the husband had neither an absolute estate or life interest in the slave in controversy, and the jury could not to any extent find him subject to the execution.

*Further*, that if under the provisions of the deed of settlement and the bill of sale, the creditors of the husband could subject his interest in the property embraced by them, without destroying or interfering with the wife's interest, then the husband's interest would be subject to the execution; but as that would be impossible at law under the terms of these deeds, the husband's interest could not be subjected to execution during the existence of the coverture.

The plaintiff prayed the court to charge the jury—1. That the deed of settlement and bill of sale did not create a separate estate in the wife in the slave levied on, because they conveyed a joint interest or estate for the use of herself and husband for their joint lives at least. 2. That if they believed the defendant in execution had since, and long previous to the levy, the uninterrupted possession of, and the direction and control of the slaves embraced in the deeds, and had received and enjoyed the profits of their labor without

the interference of the trustee, then his life interest in the property was subject to the plaintiff's execution. 3. That from the evidence adduced, the defendant in execution had an interest in the slaves levied on, which could be sold under the execution. All of which several prayers were denied, and the plaintiff excepted to all the rulings of the court.

E. W. PECK and BOLLING, for plaintiff in error.

1. The object of the deed of the 5th November, 1835, no doubt was, to withdraw the property of Townsend from the reach of his creditors, and yet, at the same time, to secure the possession and use of it to himself. This object cannot be carried into effect without violating the plainest principles of public policy, and the settled rules of law. [Hallet v. Thompson, 5 Paige, 583, 586, 587; Br. Bank at Montgomery v. Wilkins, 7 Ala. R. 589, 593.]

2. One of the incidents of property, especially of personal property, is, that it shall be liable to the debts of the owner. [Brandon v. Robinson, 18 Vesey, 429.]

3. A trust which provides that the interest of the *cestui que trust* shall not be aliened, or be made subject to the claims of creditors is void. [Lewin on Trusts and Trustees, 136; 24 Law. L. 70; Green v. Spicer, 1 R. & M. 395; Snowden v. Dalles, 6 Sim. 524; Graves v. Dolphin, 1 Ib. 66.]

4. In such cases personal property can be reached by creditors as well at law as in equity. [Carlton & Co. v. Banks, 7 Ala. R. 32; Br. Bank at Montgomery v. Wilkins, *supra*: O'Neil, Michaux & Thomas v. Teague, 8 Ala. 347, and authorities there cited.]

5. The fact that the alledged consideration received by Townsend, was money realized from the marriage settlement, cannot take the said deed out of the influence of the foregoing principles—1. Because, by the express covenants of the said settlement, the trustee had no authority to invest the money in property, except upon written request of husband and wife. 2. Because, if such request had been made in this instance, the transaction could not be sustained, as against the creditors of the husband, inasmuch as it would be obnoxious to the objection, that it was a mere device to take the

property of the husband out of the reach of his creditors, and yet to secure to him the possession and use of it, which we have seen cannot be done.    See the cases cited *supru.*

6. Nor can the first deed protect the property from the creditors of the husband, upon the idea that it creates a separate estate for the wife, because the language employed is not sufficient for that purpose, and besides, it is clear from the deed itself, that such was not the intention of the parties. [Harkins v. Coulter, 2 Porter, 463; O'Neil, Michaux & Thomas v. Teague, 8 Ala. Rep. 345, and authorities there cited.]

7. The principle as applicable to cases like the present, seems to be this, (as gathered from the current of the authorities,) that where the trust property is in the possession of a trustee—or, where the subject of the trust consists of funds, and the *cestui que trust* is, in the one case, entitled to the rents and profits, and in the other, the interest as it accrues, the creditor must go into equity—but where the lega ltitle *merely* is in the trustee, and the possession, with the use, is in fact in the *cestuis que trust,* then the creditor may take the property at law; and in such cases, if there be interests in remainder, the remainder man, and not the creditor, must seek the aid of chancery, if he deems it necessary to secure his interest in remainder, or for the purpose of separating the present from the future interest.    See the cases 7 Ala. Rep. 32 and 589, 593, and 8 Ib. 347, *supra;* and Williams & Battle v. Jones guardian, 2 Ib. 319; Hallett v. Thompson, 5 Paige, 586-7; Brandon v. Robinson, 10 Vesey, 429; Jones v. Langhorn, 3 Bibb, 453; Chancellor O'Neall, in the case of Joor, et al. v. Hodges, 1 Spears' Rep. 602, and cases there cited by him; Thomas and Howard, trustees, v. Davis, 6 Ala. Rep. 113; Dunn and wife, et al. v. The Bank of Mobile, 2 Ala. Rep. 152.]

L. E. DAWSON and B. F. PORTER, for defendant in error.

1. The intention of the parttes in every marriage settlement will be carried into effect, if consistent with the rules of law.    [2 Kent, 165; 1 N. Hamp. Rep. 64; 6 H. & Johns. 464; Green, ex'r, v. Rumph, 2 Hill's Ch. R. 1; 3 Brown's Ch. R. 471, or 571 Perkins' ed.]

2. If there be two objects in a conveyance, one of greater and the other of minor importance, if the two are inconsistent the former shall prevail. [Doe ex dem. Thompson, 5 Cow. 371; Jackson v. Moore, 6 Cow. 706; Fonbl. Book 1, § 18, p. 313, or (445); 2 Ala. 156.]

3. The object of this deed of marriage settlement is to protect the interests of the wife, and not the husband. [Rice v. Barnet, 1 Spears' C. R. 581, 583-4-5, &c.; Joor v. Hodges, Id. 593.[

4. Whenever, at common law, a conveyance is made of real estate to the use of husband and wife; it creates an entire interest in the wife not subject to the debts or the control of the husband. [19 Wend. 175; 1 Thos. Coke, 741, note; 2 Kent, 132; 8 Ves. 199.]

6. In analogy to this, it is held, that a purchase of stock, or a gift by the husband, for the joint use of the husband and wife, is a gift to the wife. [1 Roper's H. and W. 41, or 55 Jacobs' ed. 1841.]

7. The words of this settlement, declaring the uses if the *cestui que trust* were not husband and wife, would be a joint tenancy. [Fearne, 268; 4 Kent, 357-8.]

8. Though a man and woman be grantees of land, and afterwards marry, they are joint tenants. Yet if the title be made before marriage, and the possession under it does not arise until the marriage is had, they take by entireties. [Coke on Lit. 187.]

9. Where the husband and wife are the grantees of personal estate, (as in the case 1 Roper. H. & W. 41, or 55, *supra*,) the gift is accompanied with words of exclusion as to the husband is virtually a separate estate. [3 Brown's Ch. R. 318, note to Lee v. Pruett, Perkins' ed.]

10. A separate estate, is simply an estate vested in a woman, which chancery will protect against the power of her husband. [17 Eng. C. R. 1.]

11. No particular assets are requisite to create a separate estate. [3 Brown's Ch. Rep. 320, note; 2 Clancy, 262; 3 Atk. 308.]

12. Whatever interest a wife takes under an antenuptial settlement, excludes the marital rights of the husband. [Lucas v. Lucas, 1 Atk. 270; Clancey, 252, 258; Lamb v.

Wragg, 8 Porter; 2 Kent, 134; 1 N. Hamp. R. 64.] Where the husband takes as trustee, his marital rights do not attach.

13. Where the enjoyment of the estate is put beyond the control of the husband, it is a separate estate. [8 Ala. R. 35; 7 Ala. 592.]

14. The interests of the wife in this deed are not liable by the laws of South Carolina, where it was made. [1 Dessau. 179; 2 Id. 269; 3 Id. 418; Speers' R. 581.]

15. If the court is satified that the law there secures the interest under this deed to the wife, it will give it the same construction. [Story's Confl. L. 230-31; 3 Johns. Ch. R. 210; 5 S. & P. 325; 9 Porter, 39; 1 Rich. Eq. R. 187.]

16. If the husband has an interest, it cannot *suffocate* the wife's interest—it is a mere equity, and so complicate that it cannot be reached at law. [1 Spear, *ut supra;* 6 E. C. L. Rep. 564.] Besides it is a joint interest with the wife, and if it were sold, would defeat the wife's estate, or rather the enjoyment of it.

17. That the bill of sale from W. B. Townsend to the defendant in error, is protected by the settlement, see McMekin v. Edwards, et al. 1 Hill's Ch. R. 296.]

18. That the restrictions in the deed against the alienation by the husband and wife, or by the husband, is valid, during coverture. [Tuttle v. Armstrong, 17 E. Ch. R. 1; 2 Story's Eq. c. 37, § 1382, 1385.]

19. That the husband may have an interest, and if subordinate to his wife, that it cannnot be reached during coverture, see 19 Wend. 175; 8 Ves. 190; 2 Brown's Ch. Rep. 203.

20. That the trust for the wife cannot be destroyed, is the paramount object of the deed. [1 Freeman's Ch. Rep. 77; Fearne, 408.]

21. Harkins v. Coalter not an antenuptial settlement. Wilkins v. Bank, interest in the husband was exclusive of the wife.

22. That a sale of the husband's interest would be a destruction of the trust. [Carlton v. Banks, *supra*, 5 Ala. Rep. 582, Goldthwaite, J's opinion; Fearn, 320, Smith's edition, note.]

23. The purchase of the husband, under the provisions of the marriage settlement, vested the legal estate in the trustee, and the beneficial interest in the *cestui's que trust*, under the terms of the settlement. [McMeekin v. Edwards, 1 Hill's Ch. R. 296; Bank v. Brown, 2 Id. 558; Bailey's Eq. Rep. 249, note.] The defendant in execution has no legal estate in the property in question, which is indispensable to authorize the levy. [Doe ex dem. Hall v. Greenhill, 4 Barnw. & A. Rep. 689; Carlton v. Banks, 7 Ala. R. 32; The Bank v. Wilkins; Id. 592.]

24. The possession ef the husband is altogether compatible with the wife's, either joint or exclusive right, and it does not warrant an inference prejudicial to her. [Atherly on Mar. Set. 281; Doe ex dem. Greenhill, *supra;* Cadogan v. Kennett, 2 Cowp. Rep. 432; Hamilton v. Gill, 3 T. Rep. 620; Jarmin v. Woolaston, 3 Id. 681; Carlton v. Bank, *supra.*]

25. The bill of sale is good; it was but a consequence of the *antenuptial settlement*—is sustained by a valuable consideration, and not in any manner affected by the husband's continued possession. [Atherly on Mar. Set. 161, 162, 165, 173.]

COLLIER, C. J.—In Cook v. Kennerly & Smith, at this term, an agreement was entered into by Kennerly and wife in anticipation of their marriage, by which the personal estate of the latter was conveyed to a trustee for the use of herself and intended husband during their lives; at the death of either of them to the use of the survivor during his or her life; at the death of such survivor, then to such child or children of the intended wife, and the lineal descendants of such child or children, as may be then living, to them and their heirs forever. This deed of settlement also gave to the wife the power of disposing of the property embraced by the same, by writing under seal, &c., to take effect after her death. *It was held,* that the deed, so far from divesting the dominion of the husband over the estate of the wife, actually guarantied to him a right to it during his life; that this is clearly indicated by the terms of the deed, and it cannot be said that the husband had no interest in the property, or that

he ever would have assented to the creation of an inaliena-
ble separate estate in the wife. *Further*, that the husband,
in virtue of his marital rights, became the owner of all the
interest which the deed had conferred upon his wife, during
their joint lives, and though a trustee was interposed, yet up-
on the property coming into the possession of the husband, it
was liable to a levy and sale under execution, to pay his
debts. This latter conclusion it was supposed was a clear
result of the principle which maintains, that the chattel in-
terests of the wife when reduced to the possession of the hus-
band, are his property, and she cannot hold with him, either
as a joint tenant, or as a tenant in common.

It was admitted that where an interest is given to a *woman
and her children for their support and maintenance, &c.*, that
the husband of the woman, in virtue of her marriage will
have no right which can be sold under execution at law;
but the creditor's remedy, if any, is in equity, where the in-
terests of the wife and children can be separated. The con-
clusion was, that the life estate of the husband and wife,
during the lifetime of the former, in the slaves in question,
were liable at law for the debts of the husband.

The deed in the case at bar, expressly declares, that im-
mediately after the solemnization of the marriage of the hus-
band and wife, that the right to the slaves, and the issues,
profits and labor of the same, as well as the interest of the
bonds embraced by the settlement, shall be held by the trus-
tee for their joint and equal use and benefit during their joint
lives, and after the death of one of them, then to the survi-
vor, &c., without being in any manner subject to the debts
of the husband, &c. This deed, like that in the case cited,
excludes the idea of a separate estate in the wife, by giv-
ing her such an interest until the marriage is consummat-
ed, and declaring that she shall afterwards hold jointly with
the husband. The possession of the husband then, invests
him with a title to the property settled, in virtue of his mari-
tal rights, during the life of himself and wife, and makes it
subject to seizure by execution, unless the declaration that it
shall not be subject to his debts shall prevent it from having
such an effect.

In Rugely & Harrison v. Robinson, et al. 10 Ala. R. 702,

the testator gave to his son and family real and personal estate, which he declared should not be subject to his son's debts. My brethren were of opinion that " whatever a debtor can himself claim to enjoy, as a general use, benefit or interest in property, capable of separation and division, may be reached by his creditors"—" that no one can have a legal or equitable right to property, which is not subject to the payment of his debts, either at law, or by a proceeding in equity, according to the nature. of the case." Consequently it was held, that the exemption which the will attempted to give to the property bequeathed, from the son's debts, was opposed to the law, and therefore inoperative. I dissented from the opinion of my brethren in the case referred to—their judgment however, settles the law of this court, and as it is my duty, I of course acquiese in it. Here then is an authority which determines that the declaration in the deed of settlement, exempting the estate from the husband's debt cannot be supported. The case first cited, maintained, that the marital rights of the husband invest him with an estate, notwithstanding the settlement, exclusive of his wife during his life; and this estate, when coupled with the possession, may be sold under execution at law, although a trustee was interposed as the legal depository of the title.

If the deed of settlement is invalid against the creditors of the husband while he lives, the bill of sale must be alike inoperative; for the latter rests upon, and is dependent on the former. It declares that the trustee shall hold the slaves which it embraces, to the uses and trusts of the settlement. The money which the trustee paid over to the husband, vested in him at least for his life, and the slaves which he substituted for the money, stand in the same situation as it respects the husband's rights. This is a legal truism which is best illustrated by its statement.

Whether, if it was shown that the laws of South Carolina, either statute or common, recognized the settlement in question as vesting the wife with an estate which prevented the property from being subject to the husband's debts, the courts of this State would not sustain it, is a question not presented in the record. Where the statutes, or the judicial decisions

58

of a sister State are relied on, they should be proved as facts in the primary court, and if not thus brought forward and re-ferred to in the record, they will not be noticed on error. [Inge v. Murphy, 10 Ala. R. 885.] If however, the decisions of South Carolina go no further than to determine, that to subject the husband's life estate it is necessary to resort to equity—maintaining that he has an interest which is severa-ble from his wife's, we should hold that such decisions would not be authoritative here; as they would not be decisive of any question of right, but have respect merely to the tribunal in which a remedy should be sought. [Cook v. Kennerly & Smith, *ut supra*.

The view we have taken of this case is adverse to the rul-ings of the circuit court. What we have said will furnish a guide to ulterior proceedings; we need therefore but add that the judgment is reversed and the cause remanded.