## JENNINGS *vs.* BLOCKER'S ADM'R.

1. When slaves go into the possession of husband and wife, under a verbal gift from the wife's father to her sole and separate use, if the husband elects to treat them as her separate property, and holds and controls them as her trustee until her death, his marital rights cannot afterwards be asserted, but the property vests absolutely in the wife's personal representative.

2. And if the husband afterwards places the slaves, as a nurse for his infant child, in the family of the donor, who subsequently executes a mortgage on them, which mortgage is purchased by one who is cognizant of all the facts, and who afterwards, without foreclosure, sells by quit-claim to another, the wife's administrator may recover against such derivative purchaser.

3. The declarations of one who is in possession of personal property, in disparagement of his own title, are admissible evidence against a subsequent derivative purchaser from him.

4. A recital in a will made by the donor at the time of the gift to his daughter, though of no efficiency as a muniment of title, is relevant testimony as tending to show the gift, and is admissible as part of the *res gestœ.*

APPEAL from the Circuit Court of Greene.

Tried before the Hon. TURNER REAVIS.

DETINUE by the appellee, as the administrator of Mrs. Mary J. Blocker, deceased, against Samuel K. Jennings, the appellant, for a slave named Miranda and her four children. The plaintiff claimed under a parol gift to Mrs. Blocker from her father, William Murphy ; while the defendant derived title under a mortgage subsequently executed by said William Murphy to the Branch Bank at Mobile, which was purchased by William M. Murphy, the son of said William Murphy, who afterwards sold to the defendant without warranty.— The rulings of the court, in the admission of testimony objected to, and in the charge given, are assigned for error ; and these will be readily understood from the statement of facts contained in the opinion.

S. F. HALE, for the appellant :

When a father-in-law places slaves, or other property, in the possession of his daughter after marriage, the presumption of law is, that she takes the absolute title without limitation or restriction, unless there is some declaration at the time limiting or restricting her estate (Olds v. Powell, 7 Ala. 655 ; Merriwether v. Eames, 17 *ib.* 330) ; and if the property passes absolutely to the wife, *eo instanti*, it vests in the husband.

We insist, that a separate estate in a married woman, which a court of law will recognize, must be created by will, or deed, or some declaration in writing, and cannot be created by a mere verbal declaration. But if the court should determine that such a separate estate may be created by a verbal declaration, then we insist, that the evidence does not show that such an estate was created in this case. The law favors the marital rights of the husband ; and in order to create a separate estate in the wife, the husband's rights must be clearly excluded by the language used in the instrument : there must have been not only an intention, on the part of the donor, to create a separate estate, but the language used by him in passing the title must be such as, in law, will exclude the rights of the husband ; and whether the language be written or verbal, the court must deduce the intention from the words used, and pronounce upon their sufficiency, in law, to create a separate estate. In order that the court may pass upon the legal sufficiency of the words used, the witnesses must inform

the court what the language was ; but, in this case, the witness Blocker swears that he does not remember one word used or employed by the donòr : he remembers no declaration, either to himself or wife, at the time the slave went into his possession. But unless some declaration was used, at or about the time, excluding the rights of the husband, the property immediately vested in him. What words were employed by the donor, is a question of fact for the jury ; but the legal effect of the language used, is a question of law for the court ; and how can the court pronounce upon its legal effect, when it is wholly uninformed as to what language was used, or that any language was in fact used ?—Pollard v. Merrill, 15 Ala. 173, and cases there cited ; Frierson v. Frierson, 21 *ib.* 555 ; Hill on Trustees, pp. 420–59 ; Burnett v. Branch Bank, 22 Ala. 642, which shows that a witness cannot swear to a legal conclusion, but must prove the language used, and let the court pronounce upon the legal question.

The character of the estate is fixed at the time the title passes from the donor ; and unless the marital rights of the husband are then excluded, the use of appropriate language, settling the property on the wife for her separate use, it vests at once in the husband, and no subsequent acts, declarations, opinions, or conclusions, either of the donor or the husband, can divest the rights of the husband, in favor of the wife, or vest such a title in her as will sustain an action at law ; and therefore all testimony in relation to such subsequent acts, declarations, or conclusions, is inadmissible, and only calculated to mislead the jury.—Machen v. Machen, 15 Ala. 376 ; Frierson v. Frierson, 21 *ib.* 555 ; Dunn & Wife v. Branch Bank, 2 *ib.* 155.

The charge of the court, in effect, assumes that all that is necessary to create a separate estate in a married woman, is for a witness to swear that the donor consented that it should be done and intended to do it, and subsequently admitted that she had a separate estate in the property ; when the witness expressly swears that he does not remember one word uttered by the donor in giving such consent, expressing such intention, or making such admission ; nor does he tell one act done by the donor to effectuate his purpose. This, we insist, is directly adverse to the authorities above cited.

A married woman cannot acquire the legal title to property during coverture ; therefore, the legal title to the slave in suit never vested in Mrs. Blocker during her life, and her administrator cannot succeed to any greater or other right than she had at the time of her death.   In an action of detinue, the plaintiff must show a legal title to the property in himself ; and if defendant shows an outstanding title in a third person, that will defeat the action.—McCurry v. Hooper, 12 Ala. 823.

The defendant in this case was not a wrong-doer : he holds as an innocent purchaser, for valuable consideration, without notice, from one who was in possession under claim of title.

R. H. SMITH and J. D. WEBB, *contra :*

There were but three possibilities of state of title to the slaves : it was either in William Murphy, Sr., in John R. Blocker, or in John R. Blocker as trustee.   The defendant claims from the former, and yet does not pretend that the title was in him, but admits that it was not, and insists that it was in Blocker in his own right, with whom defendant in nowise connects himself, and who is constantly denying that he ever had any right.   The defendant's stand-point, then, is not that he has title, but that a third person has.

Neither is it pretended that defendant claims from Murphy as an innocent purchaser.   For, first, W. M. Murphy was present when Horner, Blocker & Co. were making their assignment, and then heard his father admit that the property was Mrs. Blocker's to her sole and separate use ; and Jennings, who claims from William M., was a son-in-law, and has only a quit-claim.   He is, therefore, a purchaser with notice, or, at least, without protection.   Wm. M. Murphy had notice again by the recital of the fact in his father's first will, which he drew.   The admissions, being antecedent to their date of claim, and antecedent to the mortgage, are good evidence to prove the facts.   Secondly, it is not proved that William M. Murphy, or Jennings, was a purchaser for a valuable consideration.   But, even if they were, it would avail nothing ; for, at the date of the mortgage, and from that time up to shortly before suit brought, there was no personal representative of Mrs. Blocker in existence, against whom an adverse right

could spring up. The separate estate was not required to be recorded. The possession of Wm. Murphy, Sr., was that of his daughter, and was as consistent with the title as it could be, there being no personal representative in existence.— There was no possession, with claim or color of title, against any one, until Mrs. Blocker's administrator was appointed.

It is apparent, then, that the defendant has not a favorable standing in court : he is defending on the ground that another (not himself) has the title, while that person is disclaiming any such right, and insisting that the right is with the plaintiff.

As to the fact of the separate estate : It is proved that the gift was to the separate use of the wife, and this is not controverted ; and if it was not, the subsequent election of the parties so to treat it, at a time when the rights of neither creditors nor purchasers had intervened, would make it such. Fellows, Wadsworth & Co. v. Tann, 9 Ala. 1003, and many other decisions of this court. But it is objected, that a separate estate cannot be created by parol. Why not? It contravenes no statute of frauds, and there is no statute of registration opposed to it.—Newman v. James, 12 Ala. 29. It has been frequently held by this court, that a deed creating a separate estate is not required to be recorded. A parol gift of personal property, accompanied by delivery, is good. Then why not a gift to one person for another ? No reason has been urged against it, nor has any principle of law been cited in conflict with it. That it may be done, see Hill on Trustees, pp. 59, 60 ; 2 Kelly 297 ; 1 Geo. Dec. 109 ; 1 Bail. Ch. 510 ; 2 U. S. Eq. Dig., p. 610, § 21 ; *ib.* p. 25, § 446 ; 3 Call 384 ; McQueen on H. and W., p. 292–3.

The objection that particular words are necessary to create a separate estate, is untenable : it is sufficient that the intention appear, and this does abundantly appear from Blocker's testimony. The property was so sent and so received, and the parties so subsequently recognized it : and that at a time when the defendant is bound by such assent, viz., before his rights, or the rights of those from whom he claims, arose. 12 Ala. 31, *supra.* The law raised a trusteeship in the husband during the coverture, in order that the gift might not fail. On the death of the wife, the trust became executed, and the property went to her personal representative.—Knight

v. Bell, 22 Ala. 199, 205 ; 19 Ala. 747 ; Puryear v. Puryear, 16 Ala. 491 ; 12 Ala. 13 ; Trippe v. John, 15 Ala. 117 ; 9 Johns. 73. It did not go to the husband.—Randall v. Shrader, 20 Ala. R. 338 ; 2 Rawle 215 ; 3 Cowen 651 ; 1 Sugden on Powers, ch. 3, § 6 ; 2 *ib.* p. 456, and note.

The above views show the admissibility of the evidence, without the necessity of noticing specially the parts excepted to. It is not required, in order to give a party's admissions in evidence, that the witness should remember the very language used ; for this would exclude all admissions : the substance of what was said, is all that is required, and all that can be given. In this case, all the court inquires is, does the language plainly indicate an intention to give, first, not to Blocker, but, secondly, to his wife. If it was given, not to Blocker, but to his wife, then it follows that it was to her separate use.

CHILTON, C. J.—This was an action of detinue, commenced by Robert Leachman, who was succeeded by Davis, the appellee, as administrator of Mrs. Blocker, to recover certain slaves, claimed to be the property of the estate of the intestate. Plea : *non detinet.*

The proof, as disclosed by a bill of exceptions, was, that Mrs. Blocker, who was the daughter of William Murphy, was married to John R. Blocker on the 11th of February, 1835, and removed with her husband to Mobile ; that early in the summer of that year, her father gave her the negro woman, who, with her subsequent issue, is now the subject of controversy. John R. Blocker, the husband, testified that said slave was not given to him, but that he requested his father-in-law to secure the property to his wife, Mrs. Blocker, to which he assented, and the negro was then placed in their possession, and remained until the death of the wife, which happened in August, 1837, when she was taken as a nurse for the decedent's little daughter by the husband, to the house of the donor, with the child ; that said J. R. Blocker was a member of the firm of Horner, Blocker & Co., of Mobile, which failed in December, 1836, and the firm assets, and the property of the individual members thereof, were assigned to Gayle & Vandergraff for the payment of debts ; that the

slave in controversy was not assigned, but in preparing a schedule of his property, the witness had an interview with the donor, who was one of the preferred creditors in the deed of assignment, who concurred with him in the conclusion, that the right of the slave was not in him, but in his wife.— Neither the assignees, nor any one else, claimed any title to her. He also proved, that the girl, in the fall of 1850, was in possession of the defendant, Jennings, and her value ; that his wife was allowed to select this servant from a number of slaves which Maj. Inge had for sale, but he does not know whether any bill of sale was made of her to any one ; that he exercised over her such control as a husband usually exercises over the servant-maid of the wife. Witness' impression was, that at the time of the gift the donor inserted a clause in his will setting forth the fact that the girl was given to the sole and separate use of his wife ; that this will was afterwards cancelled, and a new one made on the 17th of September, 1837 ; he remembers no declaration or language of Judge Murphy, in relation to the title of the slave, made at the time, or immediately before the transfer, addressed either to himself or wife ; that William M. Murphy was present at the interview had between the witness and Judge Murphy, at the time of the assignment above spoken of ; does not remember the language used by Judge Murphy, but is positive that they concurred in the fact that the slave belonged to his wife, and not the witness.

The defendant moved to exclude from the jury what this witness said respecting the title to the slave, as conceded by Judge Murphy and himself, when the assignment was made ; but the court held that it was legal. He also moved to exclude what the witness said in respect to mentioning the fact of the gift in the will, upon the ground that such proof was irrelevant, and could not affect the title to the slave ; but this motion also was rejected; and these rulings of the court, being assigned for error, present the first question for our decision.

It is unnecessary for us to determine whether a separate estate can be created in a married woman by verbal gift, although we confess we cannot well see why it could not, since no writing is required by our law to pass the title to a slave. Be this however as it may, it is too clear to admit of doubt,

that Judge Murphy intended to give the slave to his daughter, and we may concede that, without more, the title would have vested in the husband; but we have repeatedly determined, that in order to vest the title in the husband, he must have reduced it into possession as husband during the coverture.— He may repudiate all claim as husband to property given to the wife, and elect to treat it as hers, and hold or control it as her trustee; and if this election is made before the right or title is vested in him, and the coverture is determined while it is so held, his marital rights cannot be asserted afterwards to it; these rights remain as they were at the time of the dissolution of the marriage by death. In such case, the property vests absolutely, in law, in the wife, if she be the survivor, and in her administrator or personal representative if she be the party who first dies.

Whether, as against a creditor of the husband, property given to the wife, without expressions in the gift limiting it to her sole and separate use, could be exonerated from liability, by reason of his refusal to accept the gift as husband, and electing to hold the property as belonging to the wife, is not the question now presented. No creditor of Blocker is complaining; but one who, according to the testimony of William M. Murphy, was a derivative purchaser from the donor, under a mortgage executed near five years after the consummation of the gift to the wife. Claiming to derive a title through the mortgage of Judge Murphy, made on the 10th day of January, 1840, as deposed to by William M. Murphy, it is very clear that the declarations of the person through whom the defendant claims, made before his alleged purchase, in disparagement of his own title, are legal testimony.

The same reasoning is applicable to the clause inserted in the will. Of course it could have no efficacy as a muniment of title; but as a declaration of the grantor, reciting the existence of a fact then fresh in his mind, it is evidence. It will be observed, that the objection was not that the will should have been produced, or its loss proved, in order to warrant this secondary evidence. The objection was as to its relevancy. It tended to show a gift, and being made *at the time of the gift*, and as connected with it, it would be admissible upon the other ground of being part of the *res gestæ*.

The evidence presents this case : By agreement between the son-in-law and the father-in-law, the latter gives a slave to his daughter, to be held as her property by the husband, who does so hold it, consenting that it shall be hers; thus holding it as hers, she dies ; the slave is placed by the husband with his infant child, as its nurse, in the family of the donor, who, notwithstanding the gift to the daughter, and his acknowledgments, first in his proposed will, and again when taking a lien in which he was preferred by the son-in-law's assignment, and leaving out this property upon the express ground that she did not belong to his debtor, the son-in-law, but to his wife, the daughter of the donor, makes a mortgage, and embraces her in it ; this mortgage is purchased by one cognizant of all the facts, who, without foreclosure, sells by quit-claim to defendant ; and the charge of the court presents the question, as predicated upon these facts, whether the administrator of the daughter has the right to the slave as against the subsequent holder under the donor's mortgage ; the husband now deposing that he has not, and never set up, any claim to the slave, except as belonging to the wife as her separate property.   The court charged, that, if the jury believed the evidence, which shows these facts, their verdict should be for the administrator of the wife ; and in our opinion, the charge was right.   The intention clearly was, to vest in the deceased a separate estate, and although, for want of apt language to effect that object, the husband, or his creditors, might, *at law*, have defeated that intention, yet, as the husband acquiesced in it, and did what, under the proof in this case, equity would have required him to do, namely, held the property not as his own, but for her, it is not for the defendant, who must be charged with a knowledge of the facts, to set up a claim for the husband, and thus defeat the intention, by making the husband the unwilling subject of iniquity for its protection.   The husband requested that the property should be given to the wife, and not to him.   He received it, and held it, as hers ; he excluded it from his assignment, because it was hers, by the concurrence, too, of the very person from whom the defendant deduces his supposed title ; and now, since her death, he still insists and swears that it was hers and not his; and since, by her death, the trust is executed, and her repre-

sentative can take and hold the legal title, what right has a third party to intervene, and, without connecting himself in any way with the supposed title of the husband, compel him to violate his conscience, and the principles of equity, by holding as owner, and not as trustee? If the title had vested in him, it is certainly true, that, in a court of law, he could not, either by his declarations, or by a positive conveyance, have vested it in the wife during the coverture. But in this case it never vested in him *as husband*. He pretermitted that relation, and expressly waived his marital rights, by receiving and holding it as the separate estate of his wife. This he had the right to do, as against all persons who cannot in any way connect themselves with his marital rights to enforce them against his will.

This view renders it unnecessary that we examine any other question raised in the argument of counsel.

Let the judgment be affirmed.