Gillespie's Adm'r v. Burleson.

28 551
140 347

## GILLESPIE'S ADM'R *vs.* BURLESON.

[DETINUE FOR SEVERAL SLAVES BY HUSBAND'S ADMINISTRATOR AGAINST VENDEE OF SURVIVING WIDOW.]

1. *Admission of counsel construed.*—Defendant's attorney admitted, for the purposes of the trial, that the slaves sued for were given to the wife of the

Gillespie's Adm'r v. Burleson.

plaintiff's intestate during coverture, and went into their possession under the gift; but with the reservation, that 'this admission was not intended to preclude the defendant from showing, by legal proof, that the wife, by the terms of the gift, took an estate in said slaves to her sole and separate use, to the exclusion of the marital rights of her said husband, or that said intestate did not have any title to said slaves.' *Held*, that the admission did not preclude the defendant from proving, by the declarations of the donor, of the intestate, and of his wife, that no title vested in the intestate by the gift.

2. *Delivery as part of parol gift.*—While delivery is an indispensable constituent of a parol gift, it is not indispensable that it should be simultaneous with the words of conveyance.

3. *Bill of exceptions construed against appellant.*—Where the bill of exceptions stated, that the slaves sued for were given to the wife of plaintiff's intestate " in the fall of 1833", and that a witness for the defendant, who stated that the slaves were delivered "in 1833", was allowed to testify, against plaintiff's objection, to declarations made by the donor " six or eight months afterwards"; *held*, that it would be presumed on error, in order to sustain the ruling of the primary court, that the slaves were at first delivered on loan, and that therefore the donor's declarations, though made "six or eight months" after the delivery, were prior to the gift " in the fall of 1833."

4. *Admissibility of donor's declarations.*—The declarations of the donor, made previous to the consummation of the gift, but while it was under consideration and discussion by him, and in reference to and contemplation of it, and explanatory of his intention, are competent evidence in a suit involving the title; his declarations at the time of delivery, and in explanation thereof, are also admissible as part of the *res gestæ;* but his declarations after the consummation of the gift are inadmissible, either for the purpose of affecting the gift, or explaining his words or conduct at the time of the gift.

5. *Declarations in disparagement of title, admissibility of.*—The declarations of the husband, while in possession of slaves, to the effect that they are the separate property of his wife, are competent evidence against his administrator, in a suit brought by him against a purchaser from the wife after the death of the husband.

6. *Admissibility of wife's declarations of title.*—Where slaves are in the possession of husband and wife, the wife's assertions of title, when made in the presence of her husband, and acquiesced in by him, are competent evidence against his administrator, in a suit brought by the latter against her vendee ; but her assertions of title, when not made in the presence of her husband, nor communicated to him, are not competent evidence for her vendee, unless made while she had possession of the slaves, and explanatory of her possession.

7. *Separate estate may be created by parol.*—A parent may, by a parol gift of slaves to his married daughter, create in her a separate estate, and exclude her husband's marital rights.

8. *What words are insufficient to create separate estate.*—A stipulation, in a gift of slaves to a married woman, that they shall not be liable to her husband's debts, is not, of itself, sufficient to exclude his marital rights and create a separate estate in her.

9. *What does not constitute reduction to possession by husband.*—Where slaves are given by parol to a married woman, who thenceforward, during her husband's life, uniformly asserts title and possession in herself, to her sole and separate use, to which assertions of title her husband uniformly assents,—this is no reduction to possession as husband; but, as between his administrator and a purchaser from his widow after his death, his marital rights never attached.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. JOHN E. MOORE.

This action was brought by the appellant, as the administrator of James Gillespie, deceased, to recover a negro woman, named Hester, and her children, whom the defendant claimed under a purchase from the widow of said Gillespie. On the trial, as the bill of exceptions states, the plaintiff offered in evidence a written agreement, signed by the defendant's attorneys, in these words: "In this case it is admitted, that plaintiff is the administrator of James Gillespie, deceased, by regular appointment from the probate court; that said Gillespie died in the year 1849; that plaintiff was appointed his administrator in October, 1852; that no administration was had on said estate previous to his appointment; that Hester, one of the slaves sued for, is the slave of that name mentioned in the will of Henry Johnson, as having been given to Lucy Gillespie, and the other slaves are her children, born since the gift; that Hester was given to said Lucy Gillespie, after her marriage with said James Gillespie, about the fall of the year 1833, by said Henry Johnson, who was the father of said Lucy; that said slave went into the possession of Lucy Gillespie under that gift, and there remained until after the death of said James Gillespie,—the said James and Lucy being man and wife, and living together as such. But this admission is not intended to preclude the defendant from showing, by legal evidence, that Lucy Gillespie, by the terms of the gift, took an estate in said slave and her increase to her sole and separate use during her life, to the exclusion of the marital rights of the said James Gillespie; or that said James Gillespie did not have any title to said slaves. It is further admitted, that the defendant was in possession of said slaves at the date of the writ in this case, and has had them in possession since

36

June 2, 1851, claiming them as his own property; that their value and annual hire are as follows", &c.; " that defendant derived title to said slaves by purchase from said Lucy Gillespie, the widow of plaintiff's intestate, on the 2d June, 1851, after the death of said intestate, and before the grant of administration to plaintiff. The production of the bill of sale, bearing date June 2, 1851, and conveying to said defendant the title of said Lucy Gillespie in said slaves, is waived, and the *bona fides* of said sale is not impeached."

" The defendant", as the bill of exceptions further states, " then introduced John Gillespie as a witness, who testified, that he witnessed the delivery of the slave Hester by Henry Johnson to Lucy Gillespie; that said Henry Johnson, in 1833, delivered said slave to Lucy Gillespie, his daughter, and declared, on the over-night and at the time of delivery the next day, that he was going to give her some property, (alluding to the mother of the slaves in controversy,) and that he did not intend it to be liable for the debts of James, (meaning James Gillespie, the husband of said Lucy;) that this is all that was said by said Henry Johnson, at the time he delivered said slave to Lucy Gillespie; that said Johnson, some six or eight months after the slave was delivered by him to said Lucy, made the same declaration that he made at the time of the delivery of said slave, and furthermore said, that after the death of said Lucy, the property was to go to her children; that he also said, in the same conversation, that he had loaned said slave to Lucy before,—that when he got it fixed, he intended it to go to her children when she died; that at the time of the first conversation, when the delivery of the slave was made to said Lucy Gillespie, on her return home with said slave, her said husband was informed of the fact that the slave had been given to her, and not to him, and was not to be subject to his control, or liable for his debts; that her said husband then recognized and affirmed the said property to be hers, and not his, and ever afterwards continued so to do,—never exercising any control over said property, but disclaiming all right of control, and asserting that the property, the right of possession, and the right of control, were in said Lucy, and not in himself, and leaving it altogether under her control, and in her possession; she

always asserting, in his presence, that it was her property, and not his, and that she had the right of both property and possession; and he uniformly acquiescing in these assertions of his wife. Further, that the wife, from the time of the delivery of the property to the death of her said husband, uniformly asserted and maintained, without qualification or exception, that both the property and possession were in her, and not in her husband, and he uniformly asserted and maintained the same; that he died in 1849, and left her in the control and possession of the property, under this assertion of title and possession in herself; that plaintiff's intestate often complained, that it was so fixed that he could not control, or exercise any control over it; that he did this very soon after said slave was delivered to Lucy, and ever continued to complain thenceforth during his life; and that plaintiff's intestate was not present when said slave was given to Lucy.

"The plaintiff's attorney moved the court to exclude from the jury all the declarations of James Gillespie, disclaiming the property as his own, and declaring it to be his wife's property; but the court refused to exclude the same, and plaintiff excepted. Plaintiff's counsel also moved to exclude from the jury all the declarations of Henry Johnson, made by him in the second conversation testified to by the witness, as occurring six or eight months after the delivery of the slave to said Lucy; also, to exclude the declarations of Henry Johnson at the time of the delivery of said slave; which motions were severally refused, and to each refusal plaintiff excepted.

"The defendant introduced many witnesses, who testified to the uniform declarations of said James Gillespie, from the time said slave was received by him until his death, that the slaves were not his property, that they belonged to his wife, and that he had no right of possession or control over them; also, to declarations of Lucy Gillespie, in the presence of said James, that the slaves were her property, and not his, and that he uniformly assented to the same. To each of these (declarations) severally plaintiff objected, but the court overruled his objections, and permitted the evidence to go to the jury; and to each of these rulings plaintiff excepted.

" The court, being called on to charge the jury in writing, gave the following charge : 'The law favors the marital rights of the husband, and will not consider them to be interfered with by any disposition of property made for the wife's benefit, unless there is a clear exclusion of his interest and control; but it is well settled, that, in order to create a separate estate in a married woman, no particular phraseology is necessary—it is sufficient, if it manifestly appear that the intent was to secure it to the use of the wife, in such a mode as to be inconsistent with the enjoyment of the gift by the husband, or with the exercise of dominion over it by him.'

" Plaintiff then asked the following charges in writing :

" 1. That in order to arrive at the intention of the donor of the slaves, as to the title which the gift conveyed, the jury must confine themselve to his acts and declarations at the time the property was delivered, and cannot look to anything subsequent to this, for the purpose of determining his intention. The court gave this charge, but with the qualification, that no declarations of Henry Johnson could alter the character of the gift, but they might go in explanation of the words and acts in proof at the time of the gift. To the refusal to give the charge as asked, and to the qualification given, plaintiff excepted.

" 2. That if the jury believed from the evidence that the donor only intended to exempt the slaves from liability to the husband's debts, that intention would not authorize them to infer that his marital rights were excluded. This charge the court gave, but with the qualification, that the donor might give property to his daughter, a married woman, so as to exclude it from the debts of the husband; to which qualified charge plaintiff excepted.

" 3. That the words, 'I intend to give you some property', referring to the slaves in controversy, 'but not subject to your husband's debts', do not create a separate estate in the wife. The court refused this charge, and plaintiff excepted.

" The court charged the jury, on the motion of plaintiff, in writing, that if the gift was to Lucy Gillespie for her life, but not (subject) to James Gillespie's debts, and after her death to her children, then plaintiff must recover; also, that words have the same meaning in a verbal gift, when they are ascer-

tained by the jury, that they have in a will or deed; also, that they cannot believe a separate estate was created by the gift of the slaves, unless they believe that there was a clear and manifest intention by the donor to exclude the marital rights of the husband, and this intention must be shown by the evidence.

"The defendant asked the court to charge the jury, in writing, 'that if they find from the testimony that, when Henry Johnson parted with, and delivered the possession of the slave Hester to said Lucy Gillespie, he intended the slave to be the property of his said daughter, free from all claim of her husband; and that the husband, with the knowledge that such was the intention of said Johnson, when the slave came to his possession, disclaimed all interest in her, and elected to treat her as the property of his wife,—they will find for the defendant.' The court gave this charge, and plaintiff excepted.

"The court also charged the jury, on defendant's motion, in writing, 'that if they find from the evidence that James Gillespie, when the slaves passed into the possession of himself and wife, disclaimed all interest in them as the husband of said Lucy, and elected to treat them as the separate estate of his wife, and, while the slaves were in their possession, repudiated all claim or interest in or to said slaves as the husband of said Lucy, and asserted the property to be in her, —they will find for the defendant.' To this charge plaintiff excepted.

"The court also charged the jury, on motion in writing by the defendant, 'that if the slave Hester was delivered by said Johnson in 1833, to his said daughter, and upon such delivery, and constantly afterwards, she asserted (title) in herself against the marital rights of her said husband, and continued to assert such title during his life, and retained possession under such assertion of title, and her husband acquiesced in her asserted title and possession, and left the slaves in her possession at his death,—then they must find for the defendant'; also, 'that if they find that said slave was given to Lucy Gillespie, as her separate property, she being a married woman at the time of the gift, though the slave

Gillespie's Adm'r v. Burleson.

was in the possession of herself and her husband after the gift, the husband could not, by virtue of such possession, acquire any right or interest in said slave, because his possession would not be as husband, but would be referred by the law to the title of his wife'; also, 'that if property is found in the possession of a family, such possession is referred by law to the title of whichever member of that family may have the title.' To each of these charges plaintiff excepted."

The rulings on the evidence, the refusals to give the several charges asked by plaintiff, and the charges given at the request of the defendant, are now assigned as error.

DAVID P. LEWIS, for the appellant:

1. An admission of facts by an attorney of record, for the purpose of trial, binds his client, and is conclusive of the facts admitted.—1 Greenl. Ev. § 186; Starke & Moore v. Kendall, 11 Ala. 818; Doe d. Wetherell v. Bird, 7 Car. & P. 6. The proper construction of the agreement in this case is, that the defendant is precluded from any defence, except (1st) " that Lucy Gillespie, by the terms of the gift, took an estate in said slave and her increase, to her sole and separate use during her life, to the exclusion of the marital rights of the said James Gillespie"; or (2d) " that said James did not have any title to said slaves whatever."—Broom's Legal Maxims, (50 Law Library,) 279. The plaintiff was not prepared, under the agreement, to meet any other issue. The court, therefore, should have rejected the declarations of Johnson, of James Gillespie, and of Lucy Gillespie, as testified to by John Gillespie; they not tending to show either of the matters of defense reserved by the agreement.

2. The admission of the declarations of Johnson in the second conversation, had eight months after the gift, was clear and manifest error.—High v. Stainback, 1 Stew. 278.

3. The declarations of Lucy Gillespie, who was the defendant's vendor, were erroneously admitted.

4. The declarations of James Gillespie should have been excluded. The proof shows that he was deceived, or, at all events, mistaken, as to the nature of the gift; and the principle applies, that an estate cannot be defeated, released, or extinguished, by a mistake of opinion, or a confession of law.

Craig v. Baker, Hardin's R. 281-9; 3 Phil. Ev. 378; Ricard v. Williams, 7 Wheaton, 59. Nor is it competent, under the agreement, to show an extinguishment of title by estoppel, release, or in any other mode.

5. At law, where title to property has vested in the husband, as in case of gift or bequest to his wife, no contract which he may afterwards make directly with her, and, *a fortiori*, no declarations or admissions made by him during coverture, can vest the property in the wife, so as to enable her to maintain or resist an action by or against his personal representative.—Machen v. Machen, 15 Ala. 373; Frierson v. Frierson, 22 Ala. 549; Gamble v. Gamble, 11 *ib.* 966; Burnett v. Branch Bank, 22 *ib.* 642.

6. The charge of the court involves the proposition, that a gift to the wife, by the terms of which the husband has not dominion over the property, excludes his marital rights. This would exclude his marital rights whenever a trustee is interposed.—Lenoir v. Rainey, 15 Ala. 667. The charge is erroneous, also, when construed with reference to the agreement of counsel, which the court could not thus ignore.

7. The charges refused to plaintiff, and the charges given against his exceptions, were erroneous, for the reasons above stated, and because contrary to the law as declared in Rugely & Harrison v. Robinson, 19 Ala. 404, and Hill and Wife v. McRae, 27 Ala. 175.

L. P. WALKER, with whom was THOS. M. PETERS, *contra:*

1. A separate estate in a married woman may be created by parol.—Crabb's Adm'r v. Thomas, 25 Ala. 212. The husband's declarations of the wife's property are admissible; and when made while in possession, and in disparagement of his own title, are evidence against his administrator.—Jennings v. Blocker, 25 Ala. 415 ; Gamble v. Gamble, 11 *ib.* 975. The personal representative, as respects his right to recover, stands in precisely the same relation to the property in which the husband stood ; and his declarations, that he regarded the property as his wife's, are binding on his representative. Williams v. Maull, 20 Ala. 729; Jennings v. Blocker, 25 *ib.* 422 ; Puryear v. Puryear, 16 *ib.* 492 ; Degraffenreid v. Thomas, 14 *ib.* 684; Marler v. Marler, 6 *ib.* 369 ; Ricard v.

Williams, 7 Wheaton, 105. There is no rule which permits the personal representative to change his character, and to become the representative of a creditor.—16 Ala. 486. Conceding that the husband, *jure mariti*, was a trustee for his wife, with the legal title in himself; yet, upon his death, the trust was executed, and the legal title was merged in the wife's equity, thereby giving her the absolute property.— Jennings v. Blocker, 25 Ala. 423; Knight v. Bell, 22 *ib.* 199; Puryear v. Puryear, 16 *ib.* 491.

2. Whenever it appears to have been the donor's intention to convey the property to the wife, exclusive of her husband, then, without regarding the particular language used, the husband's rights do not attach.—Williams v. Maull, 20 Ala. 720. The declarations of the donor, at or about the time of the gift, as to the interest which he intended to give his daughter, are admissible, whether the husband was present or not, to show the character of the gift; nor are they to be limited to the precise period of time when the gift was made.—Olds v. Powell, 7 Ala. 657; Hale v. Stone, 14 *ib.* 803. Mrs. Gillespie's declarations of title, made in the presence of her husband, and assented to by him, are his declarations, and clearly admissible.

3. The principle contended for by appellant's counsel, that an estate cannot be defeated, released, or extinguished, by a mistake of opinion, or a confession of the law, only applies where the confessor is in under a written title. In this case, there is no evidence of any written title, or of any mistake of law in the construction of it. The husband's title, if he had any, was evidenced only by possession, and must be limited in its extent to the claim which he asserted.—7 Wheaton, 105.

4. No point can be made on the agreement of counsel. By its terms, the fact which the defendant reserved the right to controvert, was the title of James Gillespie to the property in controversy, and he was not restricted by the agreement in the mode of proof. Whatever facts, therefore, tended to support the defendant's denial of Gillespie's title, were admissible evidence for him under said agreement; with the single qualification, that they were legal evidence.

WALKER, J.—The appellant, as the administrator of the

estate of James Gillespie, deceased, was the plaintiff in a suit involving the title to a negro woman, Hester, and her children. A parol gift of Hester was made, in 1833, and before the birth of the other slaves, by Henry Johnson, to his daughter, Lucy Gillespie, who was, at the time of the gift, the wife of James Gillespie, the appellant's intestate. Lucy Gillespie survived her husband, and after his death, sold the slaves to the appellee. The question in the court below seems to have been, whether the title to the negroes vested in the husband of the donee during her coverture; and the right of the plaintiff depended upon a decision of that question in the affirmative.

The rulings of the court below, permitting the defendant to prove declarations of Henry Johnson, the donor, of Lucy Gillespie, the donee, and of James Gillespie, the appellant's intestate, are presented for revision in this court. An agreement of counsel is found in the bill of exceptions, which, it is argued, precluded the defendant from giving in evidence those declarations. The tendency of the proof objected to was, to negative the existence of any title in James Gillespie to the negroes sued for. Such proof is not only not inconsistent with the agreement, but legitimately belongs to the class of evidence which the counsel, in the agreement itself, reserve the right to introduce. The agreement admits the making of the gift, in 1833, and the coverture of defendant's vendor at the time; but reserves the right to show that the marital rights of the husband were excluded, or that he never had any title. The admission of counsel, that a gift was made during coverture, is not inconsistent with the hypothesis that, by the terms of the gift, or by the conduct and declarations of the husband and wife, the vesting of a title in James Gillespie was prevented. The evidence introduced is not outside of the reservations in the agreement of counsel; and therefore it is unnecessary to inquire, whether the maxim, "*inclusio unius est exclusio alterius*," would apply, and exclude evidence not susceptible of being classed under those reservations. For these reasons, we think that the admissibility of the declarations objected to is not at all affected by the agreement of counsel.

It is set forth in the agreement of counsel, that the gift of Hester was made to Lucy Gillespie in the "*fall of* 1833." The bill of exceptions shows that the defendant was permitted to

prove that, "*in* 1833", the slave was delivered by Henry Johnson to Lucy Gillespie; and that he declared, the night before, and at the time of the delivery, *that he was going to give her*, *Lucy Gillespie, some property, (alluding to the mother of the slaves in controversy,)* and *that he did not intend it to be liable to James Gillespie's debts.*" The defendant was also permitted to prove, that Henry Johnson, "*six or eight months afterwards*," made the same declarations, and furthermore said, "that after the death of Lucy, the property was to go to her children,—that he had loaned the property to Lucy before, and that when he got it fixed, he intended it to go to her children after her death." It would be clear that the declarations of Henry Johnson, made six or eight months after *the delivery* of the negro to his daughter, were improperly admitted in evidence, if the bill of exceptions had shown that the *gift* was made at the time of the *delivery ;* because it would be incompetent for the donor, after the consummation of the gift, by his declarations to affect, or to make evidence in reference to, the title conferred.—See Olds v., Powell, 9 Ala. 861 ; Rumbly v. Stanton and Wife, 24 Ala. 712 ; Martin v. Hardesty, 27 Ala. 458. But, while delivery is a necessary constituent of a parol gift, it is not indispensable that it should be simultaneous with the words of conveyance. The bill of exceptions informs us that the delivery was in 1833, but does not specify the time of the year. The delivery may have been, consistently with the bill of exceptions, in the first place, on loan, and may have occurred several months before the gift was actually made in the fall of 1833 ; and declarations, made six or eight months *after the delivery*, may have been *antecedent to the gift*. Therefore, we are not authorized, from the bill of exceptions before us, to decide that the court admitted in evidence declarations of the donor made after the gift. Indeed, we may intend that the declarations were made before the gift, because the bill of exceptions is as well suceptible of that construction as any other. If the declarations were made before the gift, they would be evidence, in the event they were made by the donor, during the time previous to the gift, when the gift was under consideration and discussion by the donor, and were made in reference to, and in contemplation of it, and were explanatory of the donor's intention.—Olds v. Powell, 9 Ala. 861.

. The declarations of the donor, made at the time of the delivery, were explanatory of the act done, and admissible as a part of the *res gestæ*.

·The declarations of the plaintiff's intestate, in opposition to his own, and in favor of his wife's title, were legal evidence against one claiming as the administrator of the declarant's estate, and the court did not err in admitting them.—See Jennings v. Blocker, 25 Ala. 415; Miller v. Jones, 26 Ala. 247.

It is not very clear from the bill of exceptions, whether all the declarations of Mrs. Gillespie, which the court admitted in evidence, were made in the presence of her husband, the plaintiff's intestate, and acquiesced in by him; but it is certain that such was the case in reference to all of her statements which were objected to, and made matters of exceptions. Declarations, thus made in the presence of, and acquiesced in by the husband, are as competent evidence against his administrator, as they would have been against himself. We deem it proper, however, to remark, that the assertions of the wife, not made in the presence of the husband, nor communicated to him, could only be evidence for her vendee, when they were made while she was in possession of the negroes, and explanatory of her possession.—Nelson v. Iverson, 24 Ala. 9; Johnson v. Boyles, 26 Ala. 576.

The qualification added by the court to a charge, given at the instance of the plaintiff, is objected to, upon the ground that it authorized the jury to consider the acts and declarations of the donor, subsequent to the gift, in explanation of those which were attendant upon and connected with the making of the gift. The language of the qualification to the charge is such as to leave room for doubt, whether it has the meaning and effect imputed to it. But, as the case must be reversed upon another point, it is not necessary to inquire what is the true construction of the charge given. It is sufficient for us to respond to the question of law presented in the argument of the counsel, and which will probably arise upon the future trial of the cause. We conceive the law upon the question presented to be, that no acts or declarations of Henry Johnson, the donor, subsequent to the completion of the gift, and at a time totally disconnected with the making of the gift, and not in the presence or the hearing of the appel-

lant's intestate, or communicated to him, are evidence in this case, either for the purpose of affecting the gift made, or explaining the words or conduct of the donor at the time of the gift.—Rumbly v. Stanton, *supra*.

The court below, by way of qualification to a charge given upon request of plaintiff, instructed the jury, in effect, that a parent may, by the terms of a parol gift to his married daughter, exclude her husband's marital rights. In doing so, the court did not err, because the instruction given asserted a legal proposition fully recognized by the decision of this court in the case of Crabb v. Thomas, 25 Ala. 217.—See, also, Jennings v. Blocker, 25 Ala. 415.

The plaintiff below asked in writing a charge as follows: "The words, 'I intend to give you some property, (referring to the slaves in controversy,) but not subject to your husband's debts,' do not create a separate estate." The qualification of a gift to a married woman, by a stipulation that the property shall not be liable to her husband's debts, is not sufficient, standing alone, to exclude the husband's marital rights. The law is so laid down by this court in the case of Bender v. Reynolds, 12 Ala. 446. Such a qualification imports an intention to exempt from liability to the husband's debts, and does not of itself imply an exclusion of the husband's title. The charged asked asserts a correct legal proposition, and we are not authorized by the bill of exceptions to regard it as inappropriate to the case. We therefore decide, that in the refusal of that charge the court erred.

As this case must be reversed, we do not deem it necessary to notice with particularity the three other charges given by the court. It will be sufficient for us to lay down one rule of law which seems applicable to the questions presented in those charges, for the direction of the circuit court upon a future trial; and this we are enabled to do without difficulty, as the recent decisions of this court cover the entire ground. If, at the time the slave Hester was given to Mrs. Gillespie, she asserted that the property was received to her separate use, exclusively of her husband, and she uniformly during her husband's life claimed that the possession of the negro, and of the children born after the gift, was under a separate title in her, exclusive of her husband; and the husband

assented to such assertion and claim by her, from the time of the gift to his death,—it must be held, in this suit, between the administrator of the husband and one claiming by purchase from the widow, after the husband's death, that the marital rights of the husband never attached; and it makes no difference whether the husband or wife actually controlled the property. For in such a case it cannot be said that the appellant's intestate has ever, *as husband,* reduced the property to possession. No argument is necessary to sustain this exposition of the law, because, in our judgment, it is fully authorized by the decisions of this court in the cases of Machem v. Machem, at the present term, and Jennings v. Blocker, 25 Ala. 415.

For the error pointed out in this opinion, the cause must be reversed and remanded.