## MACHEN'S EXECUTOR vs. MACHEN.

[DETINUE FOR SLAVES, BY HUSBAND'S EXECUTOR AGAINST WIFE.]

1. *Husband's marital rights.*—At common law, if personal property was given to the wife during coverture, without words creating in her a separate estate, and passed into the possession of the husband, his marital rights thereby attached; and no subsequent declarations on his part, disclaiming title in himself, and acknowledging that the property belonged to his wife, could divest his title at law, so as to enable the wife to defeat an action by his personal representative; but, if the husband disclaimed all title to the property before the title vested in him, and elected to receive and hold the property merely as trustee for the wife, and died while so holding the posses- sion, his personal representative could not recover the property from the surviving wife, even though such disclaimer and election on his part were founded in ignorance or mistake as to his legal rights; and in case of such original disclaimer and election by the husband, his subsequent declarations, asserting title in himself, and the payment of taxes on the property as his own, though they are circumstances to which the jury may look in determining his intention in reference to the property, did not, as matter of law, operate a change of the title from the wife to himself. .

2. *Separate estate of wife.*—It is settled in this State, that a valid gift of personal property, to the separate use of a married woman, may be made orally.

APPEAL from the Circuit Court of St. Clair, on change of venue from Cherokee.

Tried before the Hon. WM. S. MUDD.

THIS action was brought by the executor of the last will' and testament of James Machen, deceased, against Mrs. Jane Machen, who was the widow of said testator, to re- cover several slaves, with damages for their detention. The record does not show when the suit was commenced, the first minute-entry being an order for a change of venue, made at the October term, 1847. The slaves in contro- versy belonged to Merry Hall, deceased, at the time of his death, who was the father of Mrs. Machen ; were delivered to her and her husband, or to her alone, by the executor

of said Merry Hall, in South Carolina, about the year 1827 or 1828; were brought by them to this State, where they lived at the time, on their return home; and continued in their possession, and on the plantation of said James Machen, up to the time of his death. The defendant's evidence tended to show, that the slaves were delivered by the executor to her alone, though in the presence of her husband; that the delivery was accompanied by a declaration that the property was given to her separate use, or words to that effect; and that the husband disclaimed all title to the slaves at the time of the delivery, received them as belonging to his wife, and ever afterwards treated and recognized them as hers. The plaintiff's evidence tended to show, on the contrary, that the delivery was to both husband and wife; that the testator worked the slaves on his plantation with his other hands, spoke of them as his own, included them in the list of his taxable property, and paid taxes on them. The plaintiff reserved several exceptions to the rulings of the court on the evidence; but, as none of them are noticed in the opinion of this court, it is unnecessary to give any further statement of the evidence.

The plaintiff asked the court to give the following charges to the jury:

" 1. That, if the plaintiff has proved that the slaves sued for were on the plantation where the testator resided at the time of his death, and for many years previous, and that he had them employed in the usual manner about his dwelling and on the plantation, then proof of their respective values and hires, and that the defendant detained them from him at the time the suit was brought, *prima facie*, entitled him to recover said slaves, with their annual hire from the commencement of the suit.

" 2. That the law of this State is, that the possession of personal property by the wife is the possession of the husband; *but there may be a possession in the wife, separate and distinct from the husband, which the law recognizes and will uphold.*

"3. That if the jury believe, from the evidence, that James Machen and the defendant were husband and wife, and that the slaves in controversy were delivered to her by Humphrey Hall, in the presence of her husband, while they were in South Carolina, at the time shown by the evidence, and were brought by them to their residence in this State, and remained there until the death of the husband, working on the farm and about the house;—then, in judgment of law, that was the possession of the husband.

"4. That the law declares personal property, thus held, to be the property of the husband absolutely.

"5. That the defendant, in order to defeat such absolute right on the part of her husband, must show affirmatively that the negroes were delivered to her, for her sole and separate use, with the knowledge and consent of her husband, and that at the time of such delivery, by the laws of the State where they were delivered, a separate estate in favor of a married woman, as against the marital rights of her husband, could be created by a parol gift, accompanied by a delivery of the slaves coupled with such a limitation.

"6. That, if the defendant has not shown this, then the plaintiff is entitled to recover, if the jury find that he has proved the facts stated in the first charge asked.

"7. That if the jury believe, from the evidence, that James Machen made the declarations offered in evidence, as to the slaves being 'Jenny's property', in ignorance of his rights, then they should not be allowed to divest the property out of him, or his legal representative, the plaintiff in this action, and the jury must not allow them ; *provided the jury believe, from the evidence, that the marital rights of the husband attached to the slaves at the time of the gift and delivery to the defendant.*

"8. That if James Machen was ignorant of his rights to the property, and consented that his wife might receive it as her separate estate under that mistake, then he had the right, at any time before his death, to assert his claim, and hold the property as husband ; and that if he did so, then the defendant cannot hold the property.

"9. That if the possession of the property was with the husband, and he conceded the right of property to his wife up to the moment of his death, this is matter of equitable concession and agreement, unless the jury believe, from the evidence, that the slaves were the sole and separate estate of the wife.

"10. If Humphrey Hall delivered the property, as a gift from his father, for defendant's sole and separate use, or as a separate estate in the wife, and there is no proof which shows that the property passed out of the father, and the evidence satisfies the jury that the father died in the possession thereof, then the delivery by Humphrey Hall, as a separate estate in the wife, is void, and the rights of the husband are not thereby affected."

The court gave the eighth charge as asked, and the second and seventh with the qualifications shown by the italics, and refused the others; to which refusals, as well as to the qualifications given, and to several affirmative charges afterwards given by the court; the plaintiff reserved exceptions, and he now assigns the same as error.

L. E. PARSONS, for appellant.
ALEX. WHITE, and B. T. POPE, contra.

R. W. WALKER, J.—The question arising upon the evidence in the court below was, whether the marital rights of James Machen, who was the plaintiff's testator, and the husband of the defendant, attached to the property in controversy during the coverture. "The inquiry, in every such case, is, not whether the husband had the right to reduce the property to possession as husband, but whether he actually reduced it to possession in that capacity." In the absence of a statute changing the principle of the common law, where personal property, given to a wife during coverture, without expressions in the gift creating in her a separate estate, passes into the possession of her husband, who does nothing at the time of the gift or delivery of the property to prevent his marital rights from attaching, the

title vests *eo instanti* in him, and the property becomes his absolutely. Where the title has thus vested in the husband, no subsequent declarations made by him, disclaiming title in himself, and acknowledging the property to belong to his wife, can, at law, vest the property in the wife, so as to enable her to resist successfully the action of the husband's representative; and any such declarations, founded in ignorance or mistake as to his rights, would not, even in equity, divest the property out of the husband or his representative.

But the husband may repudiate all claim, as husband, to property given to the wife, and elect to treat it as hers, and hold or control it as her trustee; and if such disclaimer and election are made before the title is vested in him, and the coverture is determined while the property is so held, his marital rights cannot be afterwards asserted by him or by his personal representative. In such case, the property vests absolutely in law in the wife, if she be the survivor, and in her administrator or personal representative, if she be the party who first dies; and it makes no difference whether the husband or wife actually controls the property. Nor is this result at all affected by the fact, that the husband's refusal to receive the property as husband, and his election to hold it for his wife, are founded in ignorance or mistake as to his legal rights; for, although his conduct may be the result of mistake, still the fact would remain, that he has not reduced the property into possession as husband. These principles are all clearly settled by our previous decisions.—*Machen v. Machen*, 15 Ala. 373; *S. C.*, 28 Ala. 374; *Jennings v. Blocker*, 25 Ala. 415; *Gillespie v. Burleson*, 28 Ala. 551; *Lockhart v. Cameron*, 29 Ala. 355.

It must be observed, that the controversy here is between the husband's executor and the widow; and we purposely leave open the question, whether, as against a creditor of the husband, property given to the wife, without words creating in her a separate estate, can be exonerated from liability, by reason of his refusal to accept the gift as hus-

band, and electing to hold the property as belonging to his wife.—See *Jennings v. Blocker*, 25 Ala. 422.

It may be true, (though it is not now necessary to decide that point,) that although, in consequence of what transpires at the time of the delivery, the marital rights of the husband do not then attach to the property, still he may afterwards, at any time during the coverture, assert his right to the property, take possession of it as husband, and thereby vest the title in himself. Assuming this to be the law, yet, if, at the time of the gift or delivery, the husband disclaims all title, and consents to treat and hold the property as his wife's separate estate, his subsequent declaration that the property was his, or that it should go to his children, or his payment of the taxes due on the same, would not constitute, as matter of law, a change in the property from his wife to himself; but such declarations and acts are circumstances to which the jury may properly look, in order to arrive at the intention of the husband in reference to the property.

The third and fourth charges asked by the plaintiff, and upon which particular stress is laid in the written argument of counsel, were properly refused. There was evidence which tended to show hat, though the negroes were delivered to the wife during coverture, and continued on the husband's premises until his death, still he never received or held the possession as husband, but, on the contrary, always refused to do so. These charges might well have been understood by the jury as a denial of the husband's right thus to repudiate all claim to the property as husband, and of the validity of his election to hold it for his wife.

[2.] The fifth charge asked is in conflict with the repeated decisions of this court, that, independent of statute, a verbal oral gift of personal property may be made to the separate use of a married woman.—*Lockhart v. Cameron*, 29 Ala. 335, and cases cited.

Without examining more in detail the various charges given and refused, it is enough to say that, considering them

in connection with the evidence disclosed by the record, we find no error in the action of the court in relation to them, of which the appellant can complain.

Judgment affirmed.

A. J. WALKER, C. J., not sitting.