[Cahalan v. Monroe, Smaltz & Co.]

# Cahalan *v.* Monroe, Smaltz & Co.

70   271
127   361,

*Bill in Equity by Wife to enforce Trust in Lands, against Mortgagee and Purchaser from Husband; also, for Cancellation of Mortgage, and Injunction of Action at Law.*

1. *Presumed existence of common law in other States.*—In the absence of proof to the contrary, the common law will be presumed to have been of force in South Carolina in 1859; and the principles of that law, governing the husband's rights in and to the wife's property, will be applied to parties who were then domiciled in that State, and there acquired property.

2. *Husband's rights in and to wife's property.*—At common law, marriage operated as a gift to the husband of all the wife's personal property in possession, and of all her *choses in action* which he might reduce to possession during coverture; and he also became entitled to her personal earnings, as they accrued.

[Cahalan v. Monroe, Smaltz & Co.]

3. *Same, as affected by removal to this State.*—The mere removal of husband and wife to this State, bringing with them money, or other personal property, to which the husband's marital rights had attached by the law of their former domicile, does not change the *status* or ownership of such property, nor bring it within the principle laid down in the case of *Castleman v. Jeffries*, 60 Ala. 380.

4. *Renunciation of marital rights by husband.*—If the husband renounces his marital rights in and to the wife's property, "the legal effect of such renunciation would, at most, operate only to create in such property a separate estate in favor of the wife, which would partake of the nature of a mere gift by him to her," and would be an equitable estate, as distinguished from a separate estate held under constitutional and statutory provisions.

5. *Equitable estate of wife; how charged.*—A married woman may alien or charge her equitable estate as if she were a *femme sole*, and may mortgage it as security for her own or her husband's debt, not being restrained by the instrument creating it.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. CHARLES TURNER.

The original bill in this case was filed on the 24th November, 1876, by Mrs. Catherine Cahalan, the wife of Michael Cahalan, against her said husband, George H. McLaughlin, and the several partners composing the firm of Monroe, Smaltz & Co.; and sought to establish and enforce a trust on certain lots in Birmingham, on the ground that the complainant's moneys were used by her husband in paying the purchase-money and erecting the improvements; also, to cancel a mortgage on the property, which the complainant and her husband had executed to McLaughlin, for money borrowed by the husband; and to enjoin an action at law, which was brought by said Monroe, Smaltz & Co., as the purchasers at a sale made under a power in the mortgage, to recover the possession of the property. The complainant claimed, and alleged in her bill, that the moneys used by her husband in paying for the property and erecting improvements upon it belonged to her statutory separate estate, which she owned at the time of their marriage in August, 1859, being derived from the estate of her former husband, James Collins, deceased, and her own subsequent earnings; that the contract of purchase was made for her benefit, though the title-bond and conveyance were taken by her husband in his own name; that she did not discover the fact that the title was so taken, until some time in January, 1875, when she saw the property advertised for sale under execution against her husband; that in February, 1875, on her demand, after consulting an attorney, her husband executed a deed conveying the property to her, and reciting therein that the purchase-money had been paid by him with funds belonging to her statutory estate; that she gave public notice of her rights at the sale under the mortgage, and Monroe, Smaltz & Co. became the purchasers with notice thereof.

[Cahalan v. Monroe, Smaltz & Co.]

All the deeds referred to, or copies thereof, were made exhibits to the bill. The land was bought by said M. Cahalan from the Elyton Land Company, whose bond for title, dated February 3d, 1872, bound the company to make title to him on the erection of valuable improvements to a specified amount, in addition to the sum paid in cash; and their deed to him, dated June 7th, 1873, recited the payment of $650 as its consideration. The mortgage to McLaughlin was dated the 10th June, 1873; was signed by said M. Cahalan and his wife, and acknowledged by them, in the form prescribed by the statute, on the day of its date; and it was also acknowledged by Mrs. Cahalan, on the same day, on private examination apart from her husband, as shown by the certificate of the judge of probate indorsed on it. The sale under the mortgage was made on the 24th July, 1875, and the conveyance to Monroe, Smaltz & Co., as the purchasers, was executed on the 2d August, 1875.

An answer to the bill was filed by McLaughlin, denying all notice of the complainant's alleged rights, at or before he loaned the money to said Cahalan, and took said mortgage as security for its re-payment; denying also the allegations of the bill as to the use of the complainant's money in paying for the land and improvements, and asserting that the money loaned by him was borrowed and loaned for the purpose of enabling said M. Cahalan to complete the payments necessary to procure the execution of a conveyance, and was so used by him. An answer was also filed by Monroe, Smaltz & Co., denying the allegations of the bill as to the use of the complainant's funds by her husband in the purchase and improvement of the property, and requiring proof thereof; admitting that they had notice of the complainant's asserted rights when they purchased at the mortgage sale, but denying that McLaughlin had notice when he took the mortgage. After filing these answers, the said defendants made a motion before the chancellor to dissolve the injunction, both for want of equity in the bill, and on the denials contained in the answers. The chancellor sustained the motion, and dissolved the injunction, on the former ground; and his decree was affirmed by this court on appeal, as shown by the former report of the case (56 Ala. 303–6), where it is erroneously stated that the bill was dismissed for want of equity.

The bill was afterwards amended, by alleging notice to McLaughlin; and answers were filed by him, and by Monroe, Smaltz & Co., denying such notice. The cause was again submitted to the chancellor, for final decree on pleadings and proof; and he rendered a decree dismissing the bill. In his opinion, accompanying the decree, the substance of the complainant's testimony, as to the main point in the case, is thus

stated: "An examination of the testimony is necessary for the purpose of ascertaining the nature and character of the complainant's estate in the money alleged to have been used in the purchase and improvement of this property. From the complainant's own testimony, she owned and possessed all of this money, to-wit, about $8,500, before her marriage with her present husband, M. Cahalan. At the time of her marriage with him, in August, 1859, she was a resident of South Carolina; and she remained there, with her husband, until January, 1860, when they removed to Tennessee, and thence to Columbus, Georgia, where they remained until their removal to this State in 1870. It is not pretended that one dollar of the money thus used by her husband was acquired by her in any manner in this State; but, on the contrary, that she had it all in money at the time of her marriage with said M. Cahalan in South Carolina." On these facts, the chancellor held, that the complainant's money became the absolute property of her husband, on the presumption that the common law prevailed in South Carolina; and he dismissed the bill on this single ground. This decree is now assigned as error.

WATTS & SONS, and RICE & WILEY, for appellant.—At common law, when the wife has money, or other personal property, in possession at the time of the marriage, the presumption is that it becomes the property of the husband; her possession is his possession, and his marital rights at once attach. But the husband is not bound to assert his marital rights: he may renounce them, and by his acts and declarations, clearly manifesting such renunciation, prevent the property from becoming his.—*Puryear v. Puryear*, 12 Ala. 13; same case, 16 Ala. 486; *Jennings v. Blocker*, 25 Ala. 415; *Gillespie v. Burleson*, 28 Ala. 551; *Gwynn v. Hamilton*, 29 Ala. 233; *Machen v. Machen*, 38 Ala. 364; *Battle v. Short*, 52 Ala. 464. In this case, the testimony clearly shows that, from the marriage of the parties in 1859, in South Carolina, and afterwards during their residence in Tennessee and Georgia, until their removal to Alabama in 1870, by his acts and declarations, the husband treated the money as belonging to his wife, refused to assert his marital rights to any part of it, and permitted her to have and exercise exclusive control and dominion over it. This being the *status* of the money when the parties removed to this State, bringing it with them, our statutes then attached, prevented the husband from revoking his renunciation, and declared the property to be the statutory separate estate of the wife.—*Sessions v. Sessions*, 33 Ala. 522; *Castleman v. Jeffries*, 60 Ala. 380.

[Cahalan v. Monroe, Smaltz & Co.]

M. T. Porter, *contra*.—There being no proof of the statute law of South Carolina, at the time the parties were married there, the common law must be presumed to have been of force. *Goodman v. Griffin*, 3 Stew. 160, and numerous cases cited in 1st Brickell's Digest, 349, § 9. By the common law, the wife's money and property in possession became the absolute property of the husband.—*Gibson v. Land*, 27 Ala. 117; *Walker v. Fenner*, 28 Ala. 367. There is no proof that the complainant ever acquired any money or property since her removal to Alabama; and if she has or had any estate whatever in the moneys alleged to have been used by her husband, it was not held under our statutes.—*Short v. Battle*, 52 Ala. 456; *McAnally v. O'Neal*, 56 Ala. 299; *Tilford v. Torry*, 53 Ala. 120; *Helmetag v. Frank*, 61 Ala. 67; *McMillan v. Peacock*, 57 Ala. 127; *Bell v. Bell*, 36 Ala. 466; *Mims v. Sturdevant*, 18 Ala. 359; *Frierson v. Frierson*, 21 Ala. 549; *Machen v. Machen*, 15 Ala. 373; *Drake v. Glover*, 30 Ala. 382.

SOMERVILLE, J.—In the absence of evidence to the contrary, the principles of the common law will be presumed to have prevailed in the State of South Carolina at the time of appellant's marriage with her present husband, which occurred in August, 1859.—1 Brick. Dig. 349, § 9.

And the domicile of both parties being then in that State, the rights of the husband to property there acquired and owned by the wife are to be ascertained and governed by such common-law principles.—Whart. Confl. Laws, § 297; *Lichenberger v. Graham*, 50 Ind. 288.

By the common law, marriage operated as a gift to the husband of all personal property, including money, owned by, and in possession of the wife at the time, and of all *choses in action* which might afterwards be reduced to possession by the husband during the coverture. The husband was, also, entitled to the wife's personal earnings as they accrued.—*McAnally v. O'Neal*, 56 Ala. 299; *Bell v. Bell*, 36 Ala. 466. It follows that, upon marriage, the marital rights of the husband attached *eo instanti*, and the personal property and money acquired by Mrs. Cahalan before or during her coverture, and owned by her at or during this period, became absolutely his, to the same extent as if he had purchased it for value.

There is nothing, we think, in the facts of this case, which so modifies these principles as to bring it within the influence of *Castleman v. Jeffries*, 60 Ala. 380. After the property became the husband's, the mere act of bringing it into this State could not, without more, operate to change its *status* or ownership. Transportation alone could not affect the question of title.

[Lewis v. Montgomery Mutual Building and Loan Asso.]

If it be true, as insisted by appellant's counsel, that Cahalan, the husband, did any act by which he clearly *renounced* his marital rights, the legal effect of such renunciation would, at most, operate only to create in such property a separate estate in favor of the wife, which would partake of the nature of a mere gift by him to her.—*Machen's Executor v. Machen,* 38 Ala. 364; *Puryear v. Puryear,* 12 Ala. 13.

Conceding, therefore, all that is claimed by appellant's counsel, so far as concerns the evidence in this cause, the estate owned by Mrs. Cahalan in the moneys acquired in South Carolina, and alleged to have been invested in the real property here in contention, would be her *equitable* separate estate, and would not come within the statutory or constitutional provisions creating married women's separate estates.—*Helmetag v. Frank,* 61 Ala. 67; *McMillan v. Peacock,* 57 Ala. 127.

Such an estate, as uniformly settled, can be alienated or charged by the wife, as if she were a *femme sole;* and she may mortgage it as security for her own, or her husband's debts.

The legal title of the house and lot in controversy was in Michael Cahalan, the husband of appellant. The wife's claim to the property is a mere equity. The mortgage of June 10, 1873, made by them to McLaughlin, was duly and properly executed so as to convey both the legal title of the one, and the alleged equity of the other.

Under the necessary operation of these principles, the decree of the chancellor must be affirmed.


