# Vincent *v.* The State.

*Bill in Equity to set aside Fraudulent Conveyances.*

1. *Voluntary conveyance; validity as against creditors, and burden of proof as to consideration.*—A person who is indebted, or on whom rests a legal liability, can not make a gift, or voluntary conveyance of property, which will be upheld against such pre-existing debt or liability; and when the creditor seeks to reach and condemn the property so conveyed, the *onus* is on the grantee to show that the conveyance is supported by a sufficient valuable consideration.

2. *Conversion of wife's property by husband.*—If the husband converts

[Vincent v. The State.]

the *corpus* of his wife's statutory estate, either by investing it in property in his own name, or by otherwise using it for his own purposes, he thereby becomes indebted to her, and may convey to her, in payment of such indebtedness, either the property so purchased, or other property of value not materially disproportionate; but this principle does not extend to the income and profits of the funds or property so used and converted, as to which he is under no obligation to account to the wife, her heirs, or legal representatives (Code, § 2706), and which will not support a subsequent conveyance to the wife as against his prior creditors.

3.  *Renunciation by husband, of right to income and profits of wife's property.*—The court will not affirm that the husband may not renounce, in favor of the wife, his statutory right to control and dispose of the income and profits of the wife's statutory property, or invest them primarily for her benefit; but such renunciation, to prevail against the claims of his creditors, must be made before the income accrued, or before it was used or invested.

4.  *Declarations ; when admissible as part of res gestæ.*—Declarations made by parties contemporaneously with a contract, and shedding light thereon, are admissible evidence as a part of the *res gestæ ;* as also are declarations made by a person who is in possession of property, explanatory of his possession, or in disparagement of his title; but his declarations as to the source from which his title was derived, or merely narrative of past transactions, do not fall within this principle.

5.  *Exemptions ; against what debts available.*—The claim of the State against a defaulting public officer is both a tort and a crime, and no exemption of property can be claimed or allowed against it.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. THOS. M. ARRINGTON.

The bill in this case was filed on the 1st June, 1883, in the name of the State of Alabama as complainant, against Isaac H. Vincent, late treasurer of the State, his wife and children, and several other persons; and sought, principally, to set aside certain conveyances of property to Mrs. Vincent, made or procured to be made to her by her husband, on the ground that they were without consideration, and were fraudulent as against the complainant's claim against said Vincent on account of his defalcation as treasurer; and to subject the property to the satisfaction of the amount which might be found due to the complainant, on the statement of Vincent's accounts as treasurer. The property consisted of two houses and lots in the city of Montgomery, one situated on the corner of Lawrence and Washington streets, and the other on Court street. The property on Washington street was conveyed to Mrs. Vincent by V. M. Elmore, as register in chancery, by deed dated June 20th, 1881, which recited as its consideration the payment of $1,500, and a copy of which was made an exhibit to the bill. As to this deed, the bill alleged, " that the money used in paying for said lot was not the money of the said Adelia C. Vincent, but was given to her by her said husband at the time of the sale; that although said deed recites that the purchase-money was paid by the said Adelia, such was not the fact, and the same was actually paid by said I. H. Vincent, out

[Vincent v. The State.]

of moneys belonging to the State or to himself; that the execution of said deed to Adelia was without any consideration proceeding from her, and was a fraud upon the State, and the same is null and void as against the claim of the defendant." The house and lot on Court street, which was the residence of said Vincent and his family, was bought by him at a sale made by the register in chancery at Montgomery, at the price of $7,000 cash, and conveyed to him by deed dated 11th July, 1881; and he conveyed this property to his wife, by deed dated January 10th, 1883, therein reciting the consideration as follows: "Whereas I have heretofore received from my wife, C. A. Vincent, the sum of $4,500 belonging to, and forming part of the *corpus* of her statutory estate, and have used the same in the purchase of, and payment for the property hereinafter described, and have taken the title thereto in my own name; and whereas said purchase was really made for the benefit, and on account of my said wife; now, therefore, in consideration of the premises, and for the further consideration of $2,000 to me in hand paid by the said C. A. Vincent, the receipt whereof is hereby acknowledged," &c. The bill alleged that these recitals, "each and all, are untrue; that there was in truth no consideration whatever for said deed, and said conveyance was purely voluntary, and without any valuable consideration, and was and is wholly null and void as against the complainant's claim; that said Vincent had not, up to that time, received any moneys or property belonging to his said wife, and was not indebted to her at all; that he never at any time received any money belonging to his said wife, except a small sum, not exceeding $1,500, which was received at or about the time of their marriage in 1874, and had all been expended in the support of his said wife and children, by and with her consent, long prior to the election of said Vincent to said office of treasurer."

In addition to the real estate above described, there were twenty shares of stock in the Commercial Fire Insurance Company, which were standing in the name of Vincent's two infant sons, and which the·bill sought to have subjected to the satisfaction of the complainant's demand against him on account of his defalcation; and there were debts due to him from the other defendants to the bill, which it sought to subject to the satisfaction of said claim; but, as the case is here presented, these matters require no special notice. As to the complainant's claim against Vincent, the bill alleged that, in August, 1878, he was elected treasurer of the State, and entered on the discharge of the duties of said office on the 25th November, 1878; that he was re-elected in August, 1880, and again qualified, and continued to discharge the duties of the office until

[Vincent v. The State.]

on or about the 30th January, 1883, when he absconded, leaving his accounts as treasurer unsettled, and a large balance due to the State; that during his first term of office he illegally and fraudulently abstracted and converted to his own use a large sum of money, to-wit, $50,000, of moneys belonging to the State which had come into his hands as treasurer; that during his second term of office, and between the 1st December, 1880, and the 31st January, 1883, he illegally abstracted, and wrongfully and fraudulently converted to his own use, another large sum of money, to-wit, $250,000; that these several sums were not abstracted and converted at one time, but at different times during the terms aforesaid, and the amounts so abstracted and converted prior to May 1st, 1881, aggregated $150,000. The bill alleged, also, that on the 1st February, 1883, the complainant commenced suit by attachment against Vincent, on account of his defalcations as treasurer, and had writs of attachments levied on all the property described in the bill; and served writs on the several defendants who were supposed to be indebted to said Vincent; and prayed an account against Vincent, a decree declaring the conveyances to Mrs. Vincent fraudulent and void as against the complainant, and subjecting the property, with the certificates of stock and the debts attached, to the satisfaction of the amount ascertained to be due to the complainant.

An answer on oath to the bill was waived as to Mrs. Vincent, but she was required to answer the interrogatories attached to the bill on oath; and she so answered, but her answers to the interrogatories are not material to the case as here presented. She alleged that she and her husband were married in Autauga county, Alabama, on the 29th January, 1874; that her distributive share of the estate of her father, John Merritt, then deceased, amounting to the sum of $2,296.46, was received by her husband at different times, and was not used or converted by him to his own purposes, but was lent out at high rates of interest, until principal and interest amounted to $4,500, which was used by him in paying for the house and lot on Court street; that this property was bought by him as a home for her and her children, and was intended as an investment of her said funds; that the conveyance by the register was taken by mistake in the name of her husband; and that in January, 1883, on the first discovery of the mistake, her husband executed to her a deed to the property, as shown by the conveyance dated January 10th, 1883; that her husband received other moneys, at different times, belonging to her statutory estate, which were not expended by him in the support and maintenance of his family; and she claimed the benefit of all exemptions to which she might be entitled under the constitution and laws of Ala-

bama.    The certificates of stock in the insurance company, each for ten shares of $100 each, were dated respectively May 22d, and July 12th, 1881, were in favor of "Isaac H. Vincent, trustee," and were in Mrs. Vincent's possession; and as to them she answered, that they were held in trust for her two infant children, and that she did not know with what funds they were purchased, but denied that they were liable for the complainant's claim against Vincent.    A formal answer was filed by the guardian *ad litem* of the infants, requiring proof of the allegations of the bill, and submitting their rights to the protection of the court.

The complainant took the depositions of Robert Goldthwaite, cashier of the Merchants & Planters' Bank in Montgomery, and of T. L. Gilmer, book-keeper and teller in the private banking-house of F. Wolffe in Montgomery, who testified, in substance, that the sum of $20,000, part of a larger sum deposited in said M. & P. Bank by the tax-collector of Montgomery county, to the credit of said Vincent as treasurer, was drawn out by him on the 10th March, 1881, and used in "cotton transactions for future delivery" through the banking-house of said F. Wolffe; and the complainant submitted the cause on these depositions, together with a certified statement of Vincent's accounts as treasurer, made out by J. M. Carmichael, the auditor of public accounts, in February, 1883, after Vincent had absconded.    The defendants filed objections to the competency and admissibility of this statement, but the record does not show that the court acted on them.

The depositions of Mrs. Vincent, A. D. Crawford, W. B. Shapard, J. M. McNamee, and T. B. Wilkinson, were taken by the defendants, and were offered in evidence by them.    Mrs. Vincent testified, that her husband received her distributive share of the estate of her deceased father, amounting to about $2,000, and afterwards told her, "on several occasions, that he had lent it out at good interest, and had made a good deal on it;" and as to the Court street property she thus testified: "When my husband handed me the deed for this property, on the 10th January, 1883, he told me that the money paid was my money; that he had invested my money in the place, as a home for me and my children.    When he bought the place, he told me that he had bought it with my money, but that the deed had been made to him, instead of to me, as it should have been made, and that he would make a deed to me as soon as he finished paying for the place."    The complainant filed objections to these portions of her testimony, but the record does not show that the court acted on them.    Crawford was a clerk in the treasurer's office under Vincent, and he testified, in answer to cross-interrogatories by the complainant, that he first

discovered a *deficit* in Vincent's accounts at the close of October, 1882, amounting to about $200,000, and called Vincent's attention to it. Shapard and McNamee were bankers in Opelika, and they testified to Vincent's business transactions with them during the years 1871–74, during each of which years he deposited with them, at different times, about $2,000, and in 1879 about $900; that he bought $200 of stock in the Commercial Fire Insurance Company, in July, 1881, and that he was a man of small pecuniary means while he resided in the neighborhood of Opelika. T. B. Wilkinson thus testified as to a conversation he had with Vincent at the register's sale of the Court street property: " He asked me not to run the house up on him, if I did not particularly want it, as he wanted to buy it for his wife. He said that his wife had some money when he married her, and he had been buying State money with it, known as 'Horse-shoe money;' that it then amounted to $4,000, or $4,500, I can't remember which, and that his wife was very anxious for him to buy a home with it." The complainant filed objections to this evidence, but the record does not show that the court acted on them. It was admitted that the amount received by Vincent, as his wife's distributive share of her father's estate, as shown by a transcript from the Probate Court of Autauga, was $2,226.15; and it was proved that, of the money used in the purchase of the certificates of stock, $100 belonged to his infant sons.

The cause being submitted for decree on pleadings and proof, the court found and decreed, that Vincent was indebted to the complainant, on account of moneys received as treasurer and converted to his own use, on the 10th March, 1881, in the sum of $20,000, and at the end of October, 1882, in the sum of $200,000; that all subsequent gifts by him, and voluntary conveyances of property, were void as against the complainant; that no exemption could be claimed or allowed against this indebtedness, as it originated in a tort; that $2,226.15 of Mrs. Vincent's money was used by her husband in the purchase of the property on Court street, and she was entitled to be reimbursed that amount, but without interest, out of the proceeds of sale of the property, and a lien on the property was declared in her favor for that amount; that $100 of the money used in the purchase of the certificates of stock belonged to the infant defendants, and they were entitled to be reimbursed that amount, with interest, out of the proceeds of sale of the stock; that the conveyances of property were void as against the complainant, except as to the amounts so allowed, and the property was subject to condemnation and sale for the satisfaction of Vincent's indebtedness to the State, to be ascertained by the register upon a statement of his accounts as ordered. Under

[Vincent v. The State.]

this reference, the register stated the accounts of Vincent as treasurer, and reported that the balance due from him to the State, on the 31st January, 1883, was $242,440.19; and the court confirmed his report, overruling the several exceptions filed by the defendants.

The appeal is sued out by Mrs. Vincent and her children, and they here assign as error, 1st, the failure of the court to sustain the defendants' objections to the auditor's statement as evidence; 2d, the decree of reference to the register; 3d, the overruling of the defendants' exceptions to the register's report; and, 4th, the final decree.

W. L. BRAGG, for the appellants.—(1.) The statement of Vincent's accounts as treasurer, by Carmichael as auditor, is incomplete on its face, and shows that he is entitled to other credits, besides those allowed him; and even if it were complete, it would not be competent evidence against the defendants in this case. (2.) The burden of proof was on the complainant, seeking to set aside voluntary conveyances by Vincent, to show an indebtedness on his part prior to the execution of those conveyances; or, if a subsequent indebtedness was shown, to prove a fraudulent intent on his part, and participation in that intent by the grantees. There is no attempt to trace any of the complainant's money into this property.—Story on Agency, 229, 7th ed. There is no legal proof of any prior indebtedness, nor of any fraudulent intent on Vincent's part in the matter of these conveyances; and the evidence entirely exonerates Mrs. Vincent from any complicity in his wrongful acts, or any knowledge thereof. Gifts by a husband to his wife are good against creditors, unless tainted by a fraudulent intent. *Graves v. Blake*, 57 Ala. 379. If Vincent had converted his wife's separate estate, he had the right to secure her, though he were largely indebted, or even insolvent.—*Northington v. Faber*, 52 Ala. 45; 55 Ala. 369; 67 Ala. 599; 57 Ala. 246; 66 Ala. 55. (3.) But there was no conversion of his wife's funds by Vincent: on the contrary, it is proved that he used and invested it for her benefit, as he might lawfully do; and she was entitled, as against his creditors, to the profits arising from the investment.—*Early & Lane v. Owens*, 68 Ala. 180; *Fellows v. Lewis*, 65 Ala. 343; *Wilson v. Sheppard*, 28 Ala. 623; *Goodlett v. Hansell*, 66 Ala. 151. (4.) The bill seeks to enforce a civil liability, against which a claim of exemption is allowed, although the same act may be a tort, or even a crime. Exemptions are allowed, principally, for the benefit of the debtor's family, and stand on principles of public policy; and the statutes should be liberally construed, in order to effectuate that policy. "Debts contracted," as used in the statute, mean debts

[Vincent v. The State.]

incurred; and the complainant's claim is a debt, although it may spring out of a tort. That an exemption may be claimed against the State, see Thompson on Exemptions, § 386. (5.) There is no evidence that the certificates of stock were purchased with the complainant's money, nor is there any evidence which negatives the *bona fides* of the purchase.

H. C. TOMPKINS, Attorney-General, *contra.*—(1.) The statement of Vincent's accounts by the auditor was admissible as evidence on common-law principles, and is expressly made so by statute; and even if it were inadmissible, the defalcation was abundantly proved by other evidence.—Code, §§ 85, 103, 107, 3047-9; 1 Whart. Ev. §§ 108, 640, and authorities cited; 1 Greenl. Ev. §§ 383-4, 491; *Buckley v. United States*, 4 Howard, 251; 2 Brick. Dig. 23, § 123. (2.) Vincent being indebted to the complainant prior to the execution of the conveyances sought to be set aside, the burden of proving a valuable consideration was cast on the grantees; and this could not be proved by the subsequent declarations of the grantor.—*Hubbard v. Allen*, 59 Ala. 296; *Br. Bank v. Kenney*, 5 Ala. 9; *McCain v. Wood*, 4 Ala. 258; *McCaskle v. Amerine*, 12 Ala. 17. (3.) Mrs. Vincent was allowed a lien on the property, for the full amount of her money received and used by her husband; and this is all she was entitled to.—*Hubbard v. Allen*, 59 Ala. 296; *Early & Lane v. Owens*, 68 Ala. 171. (4.) The complainant's claim does not grow out of a contract, but from an embezzlement and conversion of public moneys by an officer, which is both a tort and a crime, and against which no exemption can be allowed.—*Meredith v. Holmes*, 68 Ala. 190; *Williams v. Bowden*, 69 Ala. 433; *Lathrop v. Singer*, 39 Barb. 396; *Massie v. Enyart*, 33 Ark. 688; *Smith v. Raysdale*, 36 Ark. 297; 25 La. Ann. 187. No exemptions can be allowed against the State in any case, unless it is expressly named in the statute.—*Com. v. Ford*, 29 Grat. 683; *Whiteacre v. Rector, Ib.* 766; *United States v. Hewes*, Crabbe, 307; *State v. Kinne*, 41 N. H. 238; *United States v. Hoar*, 2 Mason, 311; *People v. Rossiter*, 4 Cow. 143; *Com. v. Baldwin*, 1 Watts, 54; *Lott v. Brewer*, 64 Ala. 287; *Brooks v. State*, 54 Geo. 36; *Com. v. Cook*, 8 Barb. 220.

STONE, J.—One indebted, or on whom there rests a legal liability, can not make a gift, or voluntary conveyance of property, which will be upheld against such pre-existing debt or liability. And when a prior debt or legal liability is shown, to which such conveyed property is sought to be made subject, the burden is on the grantee, to show that the conveyance is supported by a sufficient, valuable consideration.—*Miller v.*

*Thompson,* 3 Por. 196; *Costillo v. Thompson,* 9 Ala. 937; *Spencer v. Godwin,* 3 Ala. 355; *Huggins v. Perrine, Ib.* 396; *Hamilton v. Blackwell,* 60 Ala. 545; *Zelnicker v. Bingham,* at the present term; 2 Brick. Dig. 21, § 100.

The language of our woman's law, enacted in 1850, is, that all property held by the wife previous to her marriage, or to which she may become entitled during the coverture, is her separate estate, not subject to the debts of her husband, but, nevertheless, vests in him as her trustee, who has the right to manage and control the same, and is not liable to account with the wife, her heirs or legal representatives, for the rents, income, or profits thereof.—Code of 1876, §§ 2705–6; *Lee v. Tannenbaum,* 62 Ala. 501; *Early v. Owens,* 68 Ala. 171.

If the husband convert the *corpus* of his wife's separate estate, either by using it for his own purposes, or by otherwise investing it in property in his own name, he may convey to her, in payment, either the property purchased, or other property of his own; and if there be no material disparity between the liability, and the value of the property conveyed, chancery will uphold the conveyance, and protect her rights.— *Wilson v. Sheppard,* 28 Ala. 623; *Warren v. Jones,* 68 Ala. 449; *Coleman v. Smith,* 56 Ala. 399.

This principle, however, does not embrace, or extend to the income and profits of the wife's statutory separate estate. The husband is not liable to account for these, either to the wife, or to her heirs or legal representatives.— *Whitman v. Abernathy,* 33 Ala. 155; *Lee v. Tannenbaum, supra.* His duty to expend them in the support of the household, is an imperfect obligation, and will not support a conveyance afterwards made to the wife, against the claims of prior creditors of the husband.—*Early v. Owens,* 68 Ala. 171; *Whitman v. Abernathy,* 33 Ala. 154.

We will not affirm that this statutory marital right of the husband, to control and dispose of the income and profits of the wife's property, may not be renounced in favor of the wife, or invested primarily for her benefit; but such election, to be available, must have been made before the income accrued, or before it was administered or invested. It is too late, after liabilities have been incurred, and after there has been conversion by the husband, or investment in his name.—*Early v. Owens, supra; Cahalan v. Monroe,* 70 Ala. 271.

Declarations made by parties, contemporaneously with a contract, and shedding light thereon; and declarations made by one in possession of property, explanatory of the possession, or in disparagement of the title of the declarant, are admissible in evidence, as constituting part of the *res gestæ.* But such declarations are not evidence of the source from which title was

[Vincent v. The State.]

derived, or as mere narrations of past transactions.—1 Brick. Dig. 843, §§ 553, 554, 557, 558, 560; *Ala. Gr. So. R. R. Co. v. Hawks*, 72 Ala. 112; *Walker v. Elledge*, 65 Ala. 51.

In transactions between persons nearly related, such as husband and wife, parent and child, &c., the law regards suspicious circumstances with severer scrutiny, and requires fuller explanation, than when the transaction is between mere strangers. *Hamilton v. Blackwell*, 60 Ala. 545; *Hurrell v. Mitchell*, 61 Ala 270; *Hubbard v. Allen*, 59 Ala. 283; *Pyron v. Lemon*, 67 Ala. 458.

We do not consider it necessary to decide the question of the admissibility of the auditor's certified account against Vincent, the treasurer. There was present before the chancellor on the hearing, the depositions of Goldthwate, Gilmer and Crawford. The first two, Goldthwaite and Gilmer, proved that Vincent converted to his own use twenty thousand dollars of the State's funds, on the 10th of March, 1881. Crawford proved a deficit of some two hundred thousand dollars in October, 1882. The twenty thousand dollars converted March 10th, fixed a liability on Vincent at that time, which was never paid, so far as we are informed. The property in controversy was purchased at much less than twenty thousand dollars, and was all acquired after that time. The lot on the corner of Washington and Lawrence streets was first purchased, for fifteen hundred dollars, and title taken in the name of Mrs. Vincent. This purchase bore date June 20th, 1881. It is shown that Mrs. Vincent approved this purchase, and it would seem that this was an investment of her moneys *pro tanto*, if it had been so insisted on. The point is not urged, however, and we will not consider it. Its consideration would not, probably, change the result materially.

The next purchase, claimed by Mrs. Vincent to have been made for her benefit, was the residence lot fronting on Court street. This purchase was made July 11th, 1881, at the price of seven thousand dollars, and title made to Vincent. Soon afterwards Vincent and his family commenced to occupy this property as a residence, and continued to so occupy it, until Vincent fled the country, January 29th, 1883. On the 10th January, 1883, Vincent conveyed this property to his wife, by a deed reciting it had been purchased for her, and with her money. The chancellor decreed that two twousand two hundred and twenty-six 15–100 dollars of Mrs. Vincent's money— the entire principal of her patrimony—went into the purchase of this Court street property, and he decreed her a lien on its proceeds for that sum. He denied her interest on this sum. He also condemned the lot on the corner of Washington and Lawrence streets to the payment of Vincent's default. It is not denied that the chancellor correctly ascertained the amount

of the *corpus* of Mrs. Vincent's statutory estate, which was received by her husband. They were married in 1874, and Vincent soon afterwards collected her distributive share of her father's estate—the sum ascertained by the chancellor.

It is claimed by Mrs. Vincent that she was and is entitled to the profits she alleges were made on her money while in the hands of her husband, which she claims had swelled the sum up to forty-five hundred dollars. This is the only really controverted question in the suit.

Weighing the testimony by the standard declared above, we feel forced to hold it is wholly insufficient to prove that Vincent renounced his marital right to control his wife's moneys, or to administer them for her individual use. According to Mrs. Vincent's testimony, her husband received her moneys at different times. Speaking of one occasion—(the language indicates but one time)—she says: "He went, and on his return offered me money, saying it was mine; but I told him to keep and invest it in something profitable." Now, this testimony makes no intimation whatever of any particular sum then received. It may have been one dollar, or it may have been a thousand. But, there is another objection to it still more decisive, even if the language referred to her entire patrimony. There was not a word said by either, indicating Vincent's abnegation of marital control, or that the investment was to be for the wife's individual profit. All the other testimony given in support of Mrs. Vincent's claim of the profits realized, and, indeed, that any profits were realized, consisted of the recitals of the deed of January 10th, 1883, and of his verbal admissions, which were, at most, mere narrations of facts alleged to have previously existed. The chancellor did not err in denying to Mrs. Vincent all interest or profit on her money.

The only testimony tending to show when the insurance company stock was purchased, is that of Shapard and McNamee. They sold stock to Vincent July 7th, 1881. This, too, was after his default as treasurer. No objection has been urged against this feature of the decree, and we think the chancellor determined it correctly.

We have made no allusion in this opinion to the liability incurred by Vincent, by virtue of the official bonds executed by him. His fault and deficit consisted of a conversion and misappropriation of the State's money in his hands as treasurer. This was a tort and a crime. Against such liability, the law has declared no exemptions of property.—*Meredith v. Holmes,* 68 Ala. 190; *Williams v. Bowden,* 69 Ala. 433.

We find no error in the record, and the decree of the chancellor is affirmed.