# Jaffrey & Co. *v.* McGough.

*Bill in Equity by Judgment Creditors, to set aside Fraudulent Conveyance.*

1. *Common law; presumed existence of.*—In the absence of proof to the contrary, the common law will be presumed to prevail in Georgia, or to have prevailed at a particular past time.

2. *Matrimonial domicil, as affecting property rights of husband and wife.*—Where a marriage is celebrated in Alabama, the parties having the present intention to remove at once to Georgia, where the husband then resided, that State is to be regarded as the matrimonial domicil in determining the husband's rights to the wife's personal property afterwards received by him in Alabama; and the subsequent removal of the parties to Alabama, where the property had been allowed to remain, does not divest nor affect his marital rights.

3. *Husband's rights, in and to wife's property.*—At common law, personal property belonging to the wife, reduced to possession by the husband during coverture, vested in him absolutely; and a subsequent promise by him to pay or account to the wife for it, made during the coverture, is without legal consideration.

4. *Conveyance by husband to wife; consideration, as against creditors.* A conveyance by the husband to his wife, in consideration of his alleged indebtedness to her for the value of certain slaves received by him during coverture, which were emancipated as a result of the late war, is without legal consideration as against his existing creditors, when it appears that, by the law of force when he received the slaves, they vested in him absolutely; and if he received them under a verbal agreement with his wife, after marriage, that they should be his, and should be accounted for or paid for, such agreement being void (Code, § 2709), it will not support the subsequent conveyance as against his creditors.

5. *Conveyance to several, partly valid as against creditors.*—A conveyance by an insolvent debtor to his wife and several sons, in consideration of his indebtedness to each of them separately, may be sustained as to the sons, though set aside as to the interest conveyed to the wife, on proof of adequate consideration moving from them, and a failure of proof as to their knowledge of any attempted fraud on the part of their father, though they had knowledge of his insolvency.

APPEAL from the Chancery Court of Russell.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 16th September, 1885, by E. S. Jaffrey & Co., on behalf of themselves and other

[Jaffrey & Co. v. McGough.]

judgment creditors of John McGough, against him, his wife, and their three sons; and sought to set aside, on the ground of alleged fraud, a conveyance of a large tract of land, executed by said McGough to his wife and children, on the 9th November, 1883, in consideration of his alleged indebtedness to each of them.   On final hearing, on pleadings and proof, the chancellor set aside the conveyance as to the interest conveyed to the wife, but refused to set it aside as to the interest conveyed to the sons, holding that it was supported by a valid and sufficient consideration as to them.   The complainants appeal from this decree, and assign as error the refusal to set aside the deed as to the sons; and the defendants, by consent, assign as error the setting aside of the conveyance as to the wife.   The opinion states the material facts.

NORMAN & SON, for the complainants below.—On the undisputed facts, the marriage between the parties is to be regarded as contracted and consummated in Georgia, where the husband resided.—*Glenn v. Glenn*, 47 Ala. 205; *Ford v. Ford*, 14 Amer. Dec. 201; Story's Confl. Laws, §§ 193–99; 2 Bish. M. W., § 578.   The marital rights of the husband, in and to personal property belonging to the wife, received during coverture, are to be governed by the laws of Georgia. *Craycroff v. Morehead*, 67 N. C. 422; 2 Bish. M. W., § 586; Story's Confl. Laws, §§ 379–80; *Castleman v. Jeffries*, 60 Ala. 388; *Turner v. Fenner*, 19 Ala. 355.   In the absence of proof to the contrary, the common law is presumed to prevail in Georgia.—1 Brick. Digest, 91, § 272; *Castleman v. Jeffries, supra.*   By the common law, the title to the wife's slaves, reduced to possession by the husband during coverture, vested absolutely in him.—2 Brick. Digest, 72, §§ 51–2.   Therefore, by the law governing the case, the conveyance to Mrs. McGough was without legal consideration, as against the existing creditors of the husband.—*Hubbard v. Allen*, 59 Ala. 298; *Lyne v. Wann*, 72 Ala. 48.   The conveyance to the sons is also void as against the creditors of the grantor, because they had knowledge of his insolvency, and of the simulated consideration on the part of their mother, and actively participated in the fraudulent intent to place the property beyond the reach of creditors.   They had knowledge of all the facts, and are charged with knowledge of the law.—*Hall v. Haydon*, 41 Ala. 242; *Clements v. Moore*, 6 Wall. 299; *Beale v. Guernsey*, 8 John. 446; *Wickham v.*

[Jaffrey & Co. v McGough ]

*Miller*, 12 John. 320; Bump on Fraud. Conv., 199, 203; Pomeroy's Equity, § 928, note.

H. D. CLAYTON, Jr., *contra.*—The deed is supported by an adequate consideration, so far as the interest of the sons is concerned; and it may be sustained as to them, though it be set aside as to the wife.—*Chamberlain & Parker v. Dorrance*, 69 Ala. 40; *Anderson v. Hooks*, 9 Ala. 704; *Wiley, Banks & Co. v. Knight*, 27 Ala. 336; 9 Pick. 176. But the conveyance to the wife is equally supported by a valuable consideration, and will be sustained in equity, since a court of equity would have enforced, at the instance of the wife, the contract under which the husband received her slaves. *Meyer & Co. v. Sulzbacher*, 76 Ala. 120; *Loeb & Bro. v. Manasses*, 78 Ala. 555; *Williams v. Maull*, 20 Ala. 721; *Seals v. Robinson*, 75 Ala. 370.

CLOPTON, J.—On November 9th, 1883, John McGough executed to his wife and three sons a conveyance of lands, in consideration and satisfaction of an indebtedness alleged to be due them severally. The bill is brought by judgment creditors of McGough, and the purpose is to have this conveyance set aside on the ground of fraud, and the lands condemned to the payment of their claims. The deed having been executed after the debts of complainants were contracted, the *onus* to show a valuable and adequate consideration rests on the grantees. The chancellor vacated and set aside the deed, as to the interest conveyed to Mrs. McGough, but upheld it as to the interest of the sons of the grantor. The complainants take the appeal, and by their consent the appellees also assign error.

There is no controversy as to the character of the consideration. The conveyance substantially recites, as the consideration for the interest conveyed to Mrs. McGough, that it is made for the purpose of reimbursing and paying her the reasonable value of certain property, a part of her statutory separate estate under the laws of this State, which the grantor received as her husband, and converted and appropriated to his own use and benefit, and for which he had never accounted to his wife. The property so received consisted of slaves, none of whom were sold, but were worked on the plantation of the husband until they were emancipated. The hires of the slaves do not enter into the consideration. It is insisted, that the husband received the property upon

the understanding and agreement, that it should be converted. by him, become his in fact, and that he should pay for it, which he repeatedly promised to do; and that this constitutes a valuable and sufficient consideration.    The questions of law arising on the facts are, was there such conversion of the property as rendered the husband liable to pay the reasonable value, or a promise and agreement to pay the same which the wife could have enforced? It is not controverted, that if McGough was indebted to his wife, by reason, either of a conversion of her separate estate, or of a valid promise to pay for the same, a conveyance of property in payment of such indebtedness, the price paid being fair and adequate, will be sustained, on the principle, that equity will sustain a payment voluntarily made which would have been compelled. Neither is it controverted, that the husband may renounce the trusteeship of his wife's statutory separate estate, or renounce his marital rights at common law, and refuse to take and hold the wife's property, or elect to take and hold it as her trustee.    In either case, the property remains or becomes the separate estate of the wife.    The case as presented by the record does not fall within the operation of either of these rules.    The claim is, not that the husband renounced his trusteeship, or his marital rights; but that, by agreement, the slaves ceased to be the property of the wife, and the husband acquired the ownership.

Before and at the time of the marriage, which occurred in July, 1852, McGough resided in the State of Georgia.    The marriage was solemnized in Alabama, where Mrs. McGough was domiciled; but it was understood and intended that they would reside in Georgia, where McGough had prepared a home, to which they went immediately afterwards, and continued to reside there for about ten years, when they moved to Alabama.    The slaves were received by McGough after their marriage, and during their residence in Georgia.    The husband and wife having different domicils at the time of the marriage, his is regarded as the matrimonial domicil; and the marriage having taken place with the intention to remove instantly to his domicil, the parties are presumed to submit to the laws of such domicil; and having in fact moved and resided there, the marital rights of the husband, and the rights of the wife, as regards the matrimonial *status*, and her personalty, are regulated by the laws of the intended domicil.—Story on Con. Laws, §§ 193, 194, 379, 380; *Ford v. Ford*, 14 Amer. Dec. 201.    Their removal to this State sub-

sequently to the reception of the property does not, without more, operate to change the marital rights of the husband acquired before a change of domicil.—*Cahalan v. Monroe, Smaltz & Co.*, 70 Ala. 271.

The presumption is, that the common law prevails in each of the States having a common-law origin with our own.   If there was any statute in Georgia, modifying or changing the common law as to the marital rights of the husband, or the condition of the wife's property, it is neither averred in the pleading, nor shown by the evidence.   Marriage, at common law, operated a gift to the husband of all the personalty of the wife in possession, and of her *choses* in action, if reduced to possession during coverture.—*Irwin v. Bailey*, 72 Ala. 467; *Evans v. Covington*, 70 Ala. 440.   Therefore, in the absence of a marriage contract, or some valid agreement otherwise, the slaves, having been reduced to possession during coverture, and during their residence in Georgia, became the property of McGough.

It is unnecessary to consider what would be the effect of an ante-nuptial agreement to compensate the wife for her personalty, which the husband might subsequently receive and appropriate; for, conceding that equity would compel its performance, there is no pretense that such contract was made before, or at the time of the marriage, and in consideration thereof.   The testimony of McGough is, that about the time he received and converted the slaves, which was several years after the marriage, he told his wife that he would take them, and do the best he could for her—that he would compensate her, and give her whatever they were worth.   The marital rights of the husband had accrued prior to making this promise, and nothing remained to complete his absolute ownership of the slaves, but reduction into possession.   There is no pretense that McGough obtained possession of the slaves in consequence, or on the faith of this promise; neither does it satisfactorily appear whether the promise was made before or after possession was acquired. There is no element of detriment to the wife, nor of benefit to the husband.   The want of a valuable and adequate consideration, the uncertain and equivocal nature of the terms of the agreement, and the merely persuasive character of the evidence, would have been fatal to relief, on a bill for specific performance, and an action at law would not have been maintained.   The bill and answers, however, seem to proceed on the concession and theory, that the slaves were the statutory

separate estate of Mrs. McGough. If this be correct, and we have mistaken the *status* of the property and marital rights of McGough, the contract is invalid as between the parties under the statute, which declares that "husband and wife can not contract with each other for the sale of any property."—Code, § 2709. An indebtedness, originating in such agreement under such circumstances, does not constitute a valuable and adequate consideration, sufficient to support, as against existing creditors of the grantor, a conveyance of property for its payment.

The evidence establishes the justness of the indebtedness to the sons, being for services rendered by them in superintending different plantations of the grantor after they became of age. Neither the *bona fides* of the indebtedness, nor the adequacy of the consideration of the deed, is seriously disputed. But it is contended that the conveyance should be set aside, as to their interests, on the alleged ground that they conspired to procure the deed, not solely to secure their debts, but also to put the property conveyed beyond the reach of creditors, knowing the insolvency of their father. If these allegations are proved, the conveyance is fraudulent and void *in toto*. The principles which apply and govern where a conveyance is made to secure debts owing to different persons, whose interests are several, have been considered and settled in two cases, and the distinction between the classes of conveyances clearly and properly drawn. In *Tatum v. Hunter*, 14 Ala. 557, a mortgage in which were included two debts, one a valid debt due to an infant ward of the mortgagee, and the other a simulated debt payable to the mortgagee, which was inserted to swell the indebtedness to an amount equal to the value of the property, for the purpose of covering and protecting it from other creditors, was held to be void *in toto* at law. In *Hooks v. Anderson*, 9 Ala. 704, it was held that a deed may be void in part by the statute, or by common law, and stand good for the residue; and that a mortgage executed to secure debts payable to different persons, one justly and *bona fide* due, and the other simulated, is not void as to the real creditor, if he did not participate in the fraud of the grantor; that the considerations being wholly disconnected, the fraud of the one does not implicate the other in any dishonesty of purpose. In such case the inquiry is, whether or not the creditor, to whom a debt is justly due, participated in the fraudulent intent of the grantor.

[Warren & Co. v. Barnett.]

The debts were due to the grantees severally, no one having any connection with the others. Though the conveyance is made to all, the interests conveyed are several—to have and to hold "in the proportion of the respective amounts due and paid to them by this conveyance, as herein above fully set forth and described." The sons having established a valuable and adequate consideration for the interests conveyed to them, the burden is shifted on the complainants, to show the fraudulent intent of the grantor, and their participation therein. In view of this rule of evidence, we are not clearly convinced that the chancellor erred in the conclusion that there was no fraudulent intent, and that the sons honestly believed the indebtedness to their mother to be just, is a reasonable inference from the evidence,—a mistake of law, and not a designed fraud. The deed will be permitted to stand in respect to the interests conveyed to the sons.

Affirmed.